[No. 29090-8-I. Division One. August 17, 1992.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent,* v. OVERNITE TRANSPORTATION COMPANY, *Appellant.*

26

*Richard J. Omatta, Catherine Hendricks,* and *Karr Tuttle Campbell* (*Gregory C. Sisk,* of counsel), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Paul J. Triesch, Assistant,* for respondent.

COLEMAN, J. — Overnite Transportation Company appeals the Superior Court's grant of summary judgment which requires Overnite to pay overtime to its employees who work more than 40 hours per week in the state of Washington. Overnite contends that the overtime provisions of the Washington Minimum Wage Act (WMWA) should not be applied, because the WMWA is preempted by the Federal Motor Carrier Act (MCA), because enforcement of the WMWA impedes interstate commerce in violation of the commerce clause, and because the Department of Labor and Industries violated the Administrative Procedure Act in adopting a rule which applies the WMWA to interstate motor carriers. In addition, Overnite contends that the Superior Court erred in awarding exemplary damages, a statutory penalty, and attorney fees. We affirm in part and reverse in part.

Overnite is a Virginia corporation which registered with the Washington Secretary of State on February 3, 1984, to do business as a common carrier in Renton, Washington. At its freight terminal in Renton, Overnite receives goods both from outside the state for distribution to in-state locations and from in-state locations for shipment out of state.

By August 1987, Overnite's 11 Washington driver employees had collectively worked almost 2,000 hours of overtime without receiving the overtime compensation required under the WMWA. The Department of Labor and Industries received complaints from those employees about uncompensated overtime labor. After investigation, the Department

determined that Overnite's employees had incurred a collective wage loss of $9,786.91 for overtime work performed within the state, and the Department requested that Overnite comply with the overtime provisions of the WMWA. When Overnite refused to pay the overtime wages due, the Department referred the case to the Office of the Attorney General for litigation.

On September 22, 1988, the Department filed a complaint in superior court charging Overnite with failure to comply with the WMWA and seeking recovery of overtime wages on behalf of 11 Overnite driver employees. The parties stipulated to the essential facts. Both parties stipulated that Overnite's employees were employed within the state of Washington and were compensated at a straight hourly wage for hours worked in excess of 40 per week. The parties also stipulated that $9,786.91 was the balance of pay collectively owed to Overnite's employees for overtime labor performed within the state.

After a hearing on cross motions for summary judgment, the King County Superior Court granted summary judgment to the Department. The Superior Court awarded Overnite's employees their overtime back wages due, imposed a statutory penalty of 10 percent, and granted exemplary damages of two times the wages withheld. In addition, the Superior Court awarded attorney's fees to the Department. Overnite appeals.

■ "The standard of review on appeal of a summary judgment order is de novo, with the reviewing court performing the same inquiry as the trial court." *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987). A summary judgment may be upheld where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

■ We initially consider whether the Superior Court erred by deciding that the federal MCA does not preempt the application of the WMWA's overtime provisions to an interstate motor carrier.

This precise issue was recently decided in *Department of Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 588-89, 762 P.2d 348 (1988). In *Common Carriers*, an interstate motor carrier employed a truck mechanic who worked entirely within the state of Washington. Although the mechanic worked over 40 hours per week in 35 pay periods, the employer did not pay the mechanic any overtime wages. *Common Carriers*, at 587. The employer argued that the WMWA[1] overtime provisions did not apply because they were preempted by the federal MCA.[2] *Common Carriers*, at 588. However, our Supreme Court disagreed, finding that this state's overtime wage provisions were not preempted by the federal MCA. The court explained:

> None of the standards for finding preemption are shown here. Congress has not expressed a clear intent to preempt state overtime wage provisions. Neither Congress nor the Secretary has manifested an intent to occupy the field of overtime wage regulation. The MCA and the motor carrier regulations do not contain any requirements for rates of pay. *See* 49 U.S.C. § 3102; 49 C.F.R. §§ 301-399 (1987). The WMWA does not require any employee to work in excess of the maximum hours set by the Secretary nor is there any claim this occurred here. State economic regulation of hours worked up to the federal minimum safety standard does not, in the abstract, interfere with the safety goals of the MCA. *See Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1264 (D.C. Cir. 1972).

*Common Carriers*, at 589. In reaching this decision, the court concurred in the results of cases from four federal circuits which have considered this issue. *See Common Carriers*, at 590.

Overnite argues that *Common Carriers* is distinguishable from the present case for two reasons. First, Overnite argues that *Common Carriers* involved a mechanic who worked

---

[1]The WMWA "provides that no employer shall employ anyone for a work week longer than 40 hours unless such employees receive compensation for excess hours at a rate not less than 1½ times the regular rate at which they are employed." *Common Carriers*, at 589 (citing RCW 49.46.130(1)).

[2]The federal MCA authorizes the Secretary of Transportation to "prescribe requirements for . . . maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier[.]" 49 U.S.C. § 3102(b)(1).

entirely within this state, while the present case involves drivers who work primarily within the state but who may be and have been called upon to drive interstate. However, two of the federal decisions relied upon by our Supreme Court in *Common Carriers* involved interstate drivers. *See Pettis Moving Co. v. Roberts*, 784 F.2d 439, 440 (1986); *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1259 (D.C. Cir. 1972). In addition, neither the federal cases nor *Common Carriers* suggest that working *entirely* within the state is a prerequisite to receiving overtime compensation.

■ Second, Overnite contends that *Common Carriers* is distinguishable because Overnite has made a factual showing of interference with the safety goals of the MCA. *Cf. Common Carriers*, at 589 (suggesting in dicta that a factual showing of interference justifies preemption). To make this showing, Overnite presented an affidavit stating that payment of overtime to its drivers

> is likely to significantly affect the way Overnite schedules the employees it employs primarily as [intrastate] drivers[.] In order to keep Overnite's labor costs as low as possible [Overnite is] now considering combining the responsibilities of . . . interstate and intrastate drivers, scheduling each for a long over the road trip of approximately 30 hours to Oregon, California, Idaho, or Utah at the beginning of each work week and then scheduling that same employee for 20 to 30 hours of driving within the state of Washington at the end of the week.

However, even assuming that a factual showing of interference can trigger preemption, "[t]he possibility of interference does not justify preemption." *Common Carriers*, at 589. Because Overnite's affidavit only indicates that scheduling changes are being considered, it is entirely speculative as to whether changes will occur or how, if at all, such changes would impact safety. Thus, Overnite has failed to demonstrate that the overtime provisions of the WMWA interfere with the safety goals of the MCA.

Finally, Overnite argues that *Common Carriers* and the federal decisions it relies upon were wrongly decided and urges the application of *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 91 L. Ed. 1158, 67 S. Ct. 931 (1947). In *Levinson*, the Supreme Court held that Congress did not intend the

Federal Fair Labor Standards Act of 1938 (FLSA) to apply to employees governed by the federal MCA and excluded motor carriers from the FLSA's overtime pay provisions.[3] *See Levinson*, at 661-62. However, our Supreme Court addressed the *Levinson* holding in *Common Carriers* and concluded that "[t]he vesting of federal authority in the ICC, now in the Secretary, does not control the issue of concurrent jurisdiction between the federal government and the states." *See Common Carriers*, at 590. Thus, our Supreme Court held that *Levinson* was not controlling and permitted the concurrent jurisdiction of the WMWA and the federal MCA. *See Common Carriers*, at 589-90. In so holding, our court noted that *Levinson* itself recognized that " '[t]here is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime[.]' " *Common Carriers*, at 590 (quoting *Levinson*, at 661). In light of *Common Carriers*, the Superior Court did not err by deciding in summary judgment that the WMWA's overtime provisions are not preempted by the federal MCA.

We next determine whether the application of the WMWA's overtime provisions to interstate motor carriers unduly burdens interstate commerce. The commerce clause acts as a limitation on the power of states to pass laws which affect interstate commerce. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 669, 67 L. Ed. 2d 580, 101 S. Ct. 1309 (1981). Nonetheless, the states retain a "residuum of power . . . to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it.' " *Kassel*, at 669 (quoting *Southern Pac. Co. v. Arizona*, 325 U.S. 761, 767, 89 L. Ed. 1915, 65 S. Ct. 1515 (1945)). The general rule is:

> [w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate

---

[3]We note that it is by specific legislative direction that the FLSA does not apply to employees governed by the MCA. *Levinson*, at 661-62.

commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 90 S. Ct. 844 (1970).

■ Overnite argues that requiring overtime compensation for its employees who drive more than 40 hours within the state of Washington will excessively burden interstate commerce by causing the inefficient scheduling of interstate carriage and by lengthening the driving hours of its employees who primarily drive intrastate. We disagree. The alleged "burden" of inefficient scheduling and longer driving hours would only arise from Overnite's own efforts at circumventing Washington's overtime wage law. The WMWA advances a legitimate local public interest. *See* RCW 49.46-.005 (WMWA enacted to protect "the immediate and future health, safety and welfare of the people of this state."). Although it imposes a requirement on interstate carriers not imposed by other states, "[e]conomic hardship in itself is not sufficient to invalidate as unconstitutional a state regulation affecting interstate commerce." *American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 76, 776 P.2d 950 (1989). Thus, the overtime wage provision cannot be construed to be a burden which is clearly excessive in relation to the local benefit, and the Superior Court did not err in finding that the Department was entitled to judgment on this issue as a matter of law.

The next issue Overnite raises is whether the Department of Labor and Industries failed to comply with the Administrative Procedure Act in adopting a rule to apply the WMWA to interstate motor carriers. Previously, the Department had required that overtime pay be given to any employee who regularly spent more than 50 percent of his or her work time within the state.[4] However, in *Department of*

---

[4]The 50 percent policy was apparently derived from *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1265 (D.C. Cir. 1972) where the court applied the District of Columbia's overtime pay provisions to any employee who regularly spent more than 50 percent of his or her work time in the District.

*Labor & Indus. v. Common Carriers, Inc.*, 111 Wn.2d 586, 762 P.2d 348 (1988), our Supreme Court applied the overtime provisions of the WMWA to interstate motor carriers without reference to the percent of time an employee worked in Washington. *See Common Carriers*, at 588-90. Pursuant to *Common Carriers*, the Department changed the way it applied the overtime provisions of the WMWA to interstate motor carriers and required that overtime pay be given to employees who worked more than 40 hours per week within the state.[5]

■ Overnite contends that the Department's adoption of the *Common Carriers* rule amounts to a violation of the Administrative Procedure Act, because it was not "properly adopted and published in accordance with the administrative procedure act." *Cf. State v. Kerry*, 34 Wn. App. 674, 677, 663 P.2d 500 (1983) (park rule restricting the use of automotive music speakers not properly adopted). However, requiring the Department to adopt and publish the rule of *Common Carriers* in accordance with the Administrative Procedure Act belies the fact that our Supreme Court's *Common Carriers* opinion had the force of law on the date on which it was decided. In applying *Common Carriers* to Overnite's interstate drivers, the Department was merely acting in compliance with the law as articulated by our Supreme Court. Under the particular circumstances present here, enforcement was not dependent upon the promulgation of a specific rule pursuant to the Administrative Procedure Act. Moreover, had the Department not changed its approach, Overnite would have been subject to the 50 percent rule, which would have likely increased the economic burden imposed on Overnite by the WMWA.

Overnite next contends that the Department was required to provide advance notice of the overtime wage provisions as they applied to interstate motor carriers, so that it could arrange its affairs in conformance. However, we find that

---

[5]Thus, the Department actually reduced the economic burden imposed by the WMWA.

Overnite had sufficient notice of the overtime wage provisions because the Department has complied with the notification requirements of the WMWA. RCW 49.46.140 requires the Director of the Department of Labor and Industries to "notify employers of the requirements of this act through their regular quarterly notices to employers." RCW 49.46-.140. Overnite admitted that the Department gave general notice on several occasions that "Washington law requires employers to pay employees one and a half times their normal hourly wage for each hour worked in excess of forty." Affidavit of Catherine Hendricks (Apr. 25, 1990). As to interstate motor carriers, the *Common Carriers* decision merely confirmed what the WMWA had already provided — that employers are required to pay overtime compensation to employees working more than 40 hours per week.

Finally, we determine whether the Superior Court erred in awarding exemplary damages, a statutory penalty, and attorney fees.

A. Exemplary Damages. Our statutes provide that employers who willfully and with intent to deprive pay their employees a lower wage than that which is required by statute shall be liable to judgment for twice the amount of the wages unlawfully withheld. *See* RCW 49.52.070, .050(2).[6] Under a narrow exception to these statutes, double damages are not available if a "bona fide dispute exists as to obligation of payment." *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659, 717 P.2d 1371 (1986) (bona fide dispute as

---

[6]RCW 49.52.070 provides in part:

"Any employer . . . who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages[.]"

RCW 49.52.050 provides:

"Any employer . . . who

". . . .

"(2) [w]ilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, . . .

". . . .

"[s]hall be guilty of a misdemeanor."

to whether the plaintiff held an enforceable contract and as to the actual amount plaintiff was owed).

In its final judgment below, the Superior Court awarded the underpaid employees $9,786.91 as judgment for overtime wages due, and, in addition, imposed exemplary damages of $19,573.82, amounting to double the wages due. Thus, the Superior Court in effect awarded the employees treble damages. Overnite contends that the award of exemplary damages amounted to error because a bona fide dispute existed about the obligation of payment, because exemplary damages are only available in a civil action brought by an aggrieved employee or his assignee, and because the statute only permits an award of double damages.

■ After careful review of the record below, we disagree that a bona fide dispute existed about the obligation of payment. In its detailed letter of October 30, 1987, the Department informed Overnite that its drivers were entitled to overtime compensation because the WMWA does not exempt motor carriers from its requirements and is not preempted by the federal MCA. The Department supported its position with a discussion of *Pettis Moving Co. v. Roberts*, 784 F.2d 439 (2d Cir. 1986) and *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258 (D.C. Cir. 1972), two federal cases holding that local overtime pay provisions were not preempted by the MCA.[7] Both *Pettis* and *Williams* distinguished the case of

---

[7] In *Pettis*, a New York motor carrier failed to pay its interstate drivers at time and one-half "for work over and above forty hours per week." *Pettis*, at 440. When the New York State Industrial Commissioner ordered Pettis to comply with New York's minimum wage statute, Pettis argued that the minimum wage statute was in conflict with the MCA and could not be enforced against interstate motor carriers. *Pettis*, at 440. The Court of Appeals for the Second Circuit disagreed and affirmed the Commissioner's order, holding that the New York minimum wage statute did not interfere with the ICC because the minimum wage act merely provided economic regulation, while the ICC regulated safety by setting the maximum hours to be worked. *Pettis*, at 441. The court declined to hold that federal safety regulations preempted state economic regulation of interstate motor carriers.

In *Williams*, the United States Court of Appeals for the District of Columbia Circuit similarly held that "there is no necessary inconsistency between an ICC-DOT regulation limiting maximum hours for safety reasons, and a state statute, passed as an economic regulation, for overtime pay within those limitations." *Wil-*

*Levinson v. Spector Motor Serv.*, 330 U.S. 649, 91 L. Ed. 1158, 67 S. Ct. 931 (1947), which held that the overtime wage provisions of the FLSA did not apply to employees subject to the MCA. *See Pettis*, at 441; *Williams*, at 1264 (citing *Levinson*, at 661). Overnite responded to the Department's position by arguing, in essence, that *Pettis* and other similar cases were wrongly decided and urging the application of the principles of *Levinson* to find that the WMWA is preempted by the MCA. However, Overnite failed to cite to any authority which applied the *Levinson* holding to the issue of concurrent jurisdiction between the federal government and the states. In our view, Overnite's allegation that *Pettis* was wrongly decided, absent meritorious argument to that effect and absent citation to authority which supports its view, does not amount to a bona fide dispute which justifies invoking the narrow exception to the statute providing for double damages.

 We also disagree with Overnite's contention that exemplary damages are unavailable under RCW 49.52.070 because the action was not brought by an "aggrieved employee or his assignee". The Department brought this action pursuant to its de jure authority under RCW 49.48.040(1)(b).[8] Because the Department presented no evidence that it had taken written assignments of the employees' wage claims, Overnite contends that the Department does not qualify as an aggrieved employee or his assignee. However, by virtue of its de jure authority under RCW 49.48.040(1)(b) to commence actions and to collect on behalf of employees, the Department stands in the shoes of the aggrieved employees and acts in a representative capacity on their behalf. We perceive no reason to prohibit employees from recovering exemplary damages

---

*liams*, at 1264. The court permitted the concurrent jurisdiction of the District of Columbia Minimum Wage Act of 1966 and the ICC. *Williams*, at 1264.

[8]RCW 49.48.040(1)(b) provides:

"The department of labor and industries may:

". . . .

"(b) Order the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed[.]"

under RCW 49.52.070, where those employees have recovered wages owed because the Department has acted in this representative capacity. Such an approach is entirely consistent with the statutory scheme, which has long provided an increased measure of damages to aggrieved employees whose wages have been wrongfully withheld.

■ The appropriateness of exemplary damages notwithstanding, Overnite correctly contends that the award of treble damages exceeded that which is provided by statute. The statute provides that "[a]ny employer . . . who shall violate . . . subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action . . . to judgment for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages[.]" RCW 49.52.070. Although it can be argued based upon a selected reading of the statutory language that the award of exemplary damages calls for double damages in addition to judgment for wages owed, when reading the statute as a whole we are drawn to the conclusion that the Legislature intended a singular judgment for double the wages owed, the doubling thereof to serve as exemplary damages. Had the Legislature intended the result urged by the Department, the statute would have provided for a judgment for wages unlawfully withheld plus a judgment for double that amount as exemplary damages. Instead, by legislative design, the statute speaks of a singular money judgment.

Two cases demonstrate that prior plaintiffs have received a judgment requiring the employer to pay the employee double, but not treble, the wages due. Although neither case specifically addressed whether doubling as opposed to trebling was appropriate because the issue was not raised, both cases noted that the plaintiff's judgment was doubled in a manner consistent with the interpretation we give the statute. In *Chelan Cy. Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 745 P.2d 1 (1987), the trial court determined that the employee was owed $11,632.51 in overtime wages, and "doubled this amount as exemplary damages pursuant to RCW 49.52.070. After adding interest

on the amount of wages owed, the court arrived at a judgment for $25,399.03, plus costs and attorney fees." *Sheriffs' Ass'n*, at 289. In addition, in *Mackey v. American Fashion Inst. Corp.*, 60 Wn. App. 426, 804 P.2d 642 (1991), the plaintiff sought $5,000 in wages due, "plus an additional $5,000 pursuant to the doubling provisions of RCW 49.52.070." (Footnote omitted.) *Mackey*, at 428. Although neither case provides direct authority for our interpretation of the statute, they lend credibility to our view.

Considering these illustrative cases and viewing the statutory language as a whole, we hold that the Superior Court erred by awarding double the wages owed as exemplary damages in addition to the judgment for back wages due. Accordingly, we modify the judgment by reversing the separate award for exemplary damages and by providing for judgment of $19,573.82, amounting to twice the wages unlawfully withheld.

B. Statutory Penalty. RCW 49.48.060(3) provides in relevant part:

> Upon being informed of a wage claim against an employer . . ., the director shall, if such claim appears to be just, immediately notify the employer . . ., of such claim by mail. *If the employer . . . fails to pay the claim or make satisfactory explanation* to the director of his failure to do so, *within thirty days thereafter*, the employer . . . shall be liable to a penalty of ten percent of that portion of the claim found to be justly due. . . .

(Italics ours.) RCW 49.48.060(3). Pursuant to RCW 49.48-.060(3) the Superior Court imposed the 10 percent statutory penalty, noting in its oral decision that whether or not Overnite had a good faith reason for withholding overtime pay was not material. Overnite contends that this was error.

However, the Superior Court was correct in stating that the absence or presence of a good faith reason for withholding wages was not material. As provided by statute, the material issue is whether Overnite made a satisfactory explanation for its nonpayment of wages owed within the statutory 30-day period. Although Overnite responded by written brief within 30 days of the Department's request for an explanation, its response was not satisfactory. Overnite

merely argued that the WMWA was preempted by the MCA, a position which was contravened by the Department's persuasive authority and which did not ultimately prevail. Because Overnite failed to make a satisfactory explanation, we affirm the imposition of the statutory penalty.

C. Attorney Fees to Prevailing Party. The Superior Court awarded attorney fees and costs to the Department pursuant to RCW 49.52.070, .46.090(2), and .48.030. Overnite appeals the imposition of attorney fees and costs upon each of these statutory grounds.

First, Overnite contends that attorney fees are not warranted under RCW 49.52.070,[9] the statute permitting exemplary damages, because a bona fide dispute existed as to obligation of payment and because fees are only available under this statute to an "aggrieved employee or his assignee". However, as noted *supra*, we disagree that a bona fide dispute existed as to obligation of payment. In addition, we decline to hold that the Department is precluded from collecting attorney fees because it used its de jure authority under RCW 49.48.040(1)(b) rather than taking written assignments of the employees' wage claims. As noted *supra*, in using its de jure authority the Department stood in the employees' shoes and brought its action on their behalf. Permitting the Department to recover attorney fees while serving in this representative capacity is consistent with the statute, furthers the Department's ability to bring future wage claims, and serves

---

[9] RCW 49.52.070 provides:

"Any employer . . . who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees[.]"

RCW 49.52.050 provides:

"Any employer . . . who

". . . .

"(2) Wil[l]fully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, . . .

". . . .

"[s]hall be guilty of a misdemeanor."

as a deterrent by placing employers on notice that they will be liable for the attorney fees incurred because of their wrongful refusal to pay. Because we affirm the award of attorney fees under RCW 49.52.070, we need not address the other statutory bases relied upon by the trial court.

▆▆▆▆▆ Finally, Overnite claims that the Department failed to properly support its request for attorney fees and that the fees awarded were not cost related. However, "[t]he standard of review of a fee award is manifest abuse of discretion." *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 375, 798 P.2d 799 (1990). In addition, the Supreme Court has rejected Overnite's argument that attorney fee awards must be cost related where nonprofit counsel is concerned. *Blum v. Stenson*, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984) (permitting the Legal Aid Society of New York to recover attorney fees at prevailing market rates for successfully bringing a 42 U.S.C. § 1988 claim). We note that the Department presented a detailed affidavit outlining the hours expended and activities engaged in to present its claim (a total of 167.25 hours expended) and that the Superior Court awarded attorney fees at the reasonable rate of $100 per hour. In light of the Department's affidavit and *Blum*, the award of fees did not amount to an abuse of discretion.

The order of summary judgment is affirmed as modified.

GROSSE, C.J., and PEKELIS, J., concur.

Reconsideration denied September 30, 1992.

Review denied at 120 Wn.2d 1030 (1993).