IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | No. 39459-0-III |
| Appellant, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| CANNABIS GREEN, LLC, dba LOVELY BUDS, a Washington limited liability company, SIMPLY BUD, LLC dba LOVELY BUDS NORTH, a Washington limited liability company, TLE OF SPOKANE, LLC dba LOVELY BUDS DIVISION, a Washington limited liability company, and TODD BYCZEK and ELIZABETH BYCZEK, in their individual capacities and as a marital community, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

STAAB, J. — After settling a wage complaint with Cannabis Green, the

Department of Labor and Industries (DLI) continued to investigate the company,

believing that other employees had been denied overtime pay. When Cannabis Green

ended negotiations and stopped cooperating, DLI filed a lawsuit in superior court,

seeking damages of "approximately" $318,500 on behalf of unidentified employees.

Cannabis Green moved to dismiss, arguing that DLI was not authorized to file a lawsuit

without a wage order, wage complaint, or wage assignment. The superior court agreed and concluded that DLI had failed to state a claim upon which relief could be granted. DLI appeals, arguing that its "de jureauthority," granted by RCW 49.48.040(1)(b), authorizes it to institute actions in superior court on behalf of unidentified workers affected by wage violations without a wage order, wage assignment, or wage complaint.

We disagree and affirm dismissal of DLI's civil action. As an administrative agency, DLI has only the powers bestowed on it by the legislature. The authority granted by RCW 49.48.040(1)(b) allows DLI to "[o]rder the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed." This unambiguous language allows DLI to institute a civil action only for the collection of specified wages and penalties that DLI has previously ordered an employer to pay. In this case, since DLI failed to comply with this statutory prerequisite it is not authorized to institute an action in superior court.

BACKGROUND

Because this is a motion for summary judgment, the facts are set out in a light most favorable to the nonmoving party, DLI.

In January 2019, DLI issued a "Wage Payment Act" (WPA) violation against Cannabis Green after receiving a wage complaint from one of its employees. Cannabis Green is an entity doing business as Lovely Buds, Lovely Buds North, and Lovely Buds Division. The employee conveyed that like most of the other employees of Cannabis

Green, she was required to work at all three Lovely Buds locations. The employee claimed that while she never worked overtime at any individual store, she worked overtime when her hours at the three stores were combined. When this occurred, she was not paid overtime for the hours worked. This employee opined that aside from one other employee, all employees worked similar schedules across the different locations and it was unlikely they were properly compensated for overtime work. Eventually, DLI settled the employee's complaint.

Meanwhile, DLI opened a company-wide investigation to determine if other employees of Cannabis Green were being denied overtime. DLI interviewed workers and obtained partial payroll records from Cannabis Green. DLI determined that there was a joint-employer relationship with respect to the employees and each shop, and determined that overtime hours should be calculated based on collective hours worked in all three shops.

In late 2020, DLI asked Cannabis Green for additional records and information. Counsel for Cannabis Green responded by questioning the validity of the investigation and indicated that his client would no longer be cooperating. DLI then attempted to serve subpoenas on Cannabis Green, but they were unable to serve the owners.

Cannabis Green contends that it was unaware of a formal investigation into their business until one year after the original employee's wage complaint was resolved.

Additionally, Cannabis Green pointed out that DLI did not respond to concerns expressed by Cannabis Green relating to the scope of the investigation.

In March 2021, DLI and the attorney general's office attempted to serve documents purporting to be administrative subpoenas at the three Lovely Buds locations. In April 2021, Cannabis Green moved for a writ to stop the investigation and quash the subpoenas. The court found that the subpoenas were not properly served, but otherwise denied Cannabis Green's petition for a writ.

DLI and Cannabis Green continued to negotiate but these negotiations eventually ended without a resolution. Cannabis Green rejected DLI's suggestion for mediation and rejected a proposed compliance agreement. Cannabis Green asserted that DLI had not received a specific wage complaint from an employee, and asserted that the proposed compliance agreement would not protect Cannabis Green from additional claims by employees. Finally, Cannabis Green rejected DLI's demand for attorney fees or costs.

Based on the information received during its investigation, and Cannabis Green's refusal to continue negotiations, DLI filed a complaint in superior court, seeking damages for wages in an unspecified amount for unidentified employees. The complaint alleged that Cannabis Green violated laws regarding overtime, hours worked, paid sick leave, and meal and rest breaks. DLI asserted that it brought the causes of action "on behalf of affected workers including all current and former non-exempt employees who worked for Cannabis Green." Clerk's Papers (CP) at 4. DLI did not claim that it had determined the

4

amount owed to employees or that it had ordered Cannabis Green to pay the amount owed. Finally, in its prayer for relief, it requested unspecified compensatory and exemplary damages for affected workers as well as attorney fees.

Several months later, DLI moved to amend its complaint. In the proposed amended complaint, DLI indicated that "the approximate amount owed to workers is $318,500." CP at 23.

Cannabis Green objected to DLI's motion to amend its complaint and moved to dismiss under CR 12(b)(6) and CR 56. The superior court granted Cannabis Green's motion, concluding without further explanation that there was no genuine issue of material fact and that DLI had failed to state a claim upon which relief could be granted.

DLI appeals.

## ANALYSIS

The primary issue in this case is whether DLI is authorized by RCW 49.48.040(1)(b) to initiate an action in superior court to collect unspecified wages without first ordering the employer to pay wages owed. While Cannabis Green contends that the statute limits DLI's authority to initiate a lawsuit, DLI asserts that the statute grants it plenary authority to enforce wage violations in superior court.

The trial court granted Cannabis Green's CR 12(b) motion after considering declarations, so the parties concede that the summary judgment standard applies. Under this standard, we consider the facts and reasonable inferences in a light most favorable to

the nonmoving party and review de novo the trial court's ruling. *Pearson v. Dep't of Lab. & Indus.*, 164 Wn. App. 426, 431, 262 P.3d 837 (2011). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

1.    BACKGROUND OF COLLECTION OF WAGES IN PRIVATE EMPLOYMENT ACT
      (CWPEA) AND THE WPA

Before addressing the statutory interpretation of RCW 49.48.040 of the CWPEA, the background and history of wage complaints in Washington is helpful.

*A. The CWPEA*

In 1935, the legislature permitted DLI to become involved in wage claims between private employers and private employees through the CWPEA. The original version of the act granted the director of DLI the discretion to "[t]ake assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel." LAWS OF 1935, ch. 96, § 1. The original act also authorized DLI to investigate employers "for the purpose of carrying out the provisions of this act," which included the power to subpoena records and depose witnesses. *Id.*

In 1971, the legislature modified the CWPEA. LAWS OF 1971, 1st. Ex. Sess., ch. 55, § 4. Specifically, RCW 49.48.060(1) was amended to authorize the director to require an employer to pay a bond when it appeared upon investigation after a wage assignment, that the employer was representing its ability to pay wages but refused to do

6

so. If the employer failed to provide the bond, DLI was authorized to commence suit in superior court, which could order business operations to be suspended until the bond was paid. Former RCW 49.48.060(2) (1971).

The statute was amended to also provide that when DLI was "informed" of a valid wage claim, it was required to notify the employer of the claim by mail. Former RCW 49.48.060(3) (1971). If the employer failed to pay the claim or provide a satisfactory explanation within 30 days, the employer would be liable for a 10 percent penalty. *Id*. The penalty is payable to DLI and creates a cause of action that can be pursued separate from an action on the wage claim. *Id*.

In 1987, the CWPEA was amended again. LAWS OF 1987, ch. 172. The amendment broke down former RCW 49.48.040 into three specific subsections. The amended statute maintained DLI's discretionary authority to investigate an employer for wage violations under subsection (1)(a) and take assignments of wage claims from employees who were unable to afford an attorney under subsection (1)(c). The modified statute added subsection (1)(b) that now authorizes DLI to "[o]rder the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed." LAWS OF 1987, ch. 172, § 1. The statute has not been amended since 1987, and the relevant portions provide:

1) The department of labor and industries may:

7

(a) Upon obtaining information indicating an employer may be committing a violation under chapters 39.12, 49.46, and 49.48 RCW, conduct investigations to ensure compliance with chapters 39.12, 49.46, and 49.48 RCW;

*(b) Order the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed; and*

(c) Take assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel when in the judgment of the director of the department the claims are valid and enforceable in the courts.

RCW 49.48.040 (emphasis added).

### B.  The WPA

In 2006, the legislature enacted a new process of handling wage violations known as the WPA, currently codified at RCW 49.48.082 through .087.  *See* LAWS OF 2006, ch. 89, § 2.  The WPA provides additional enforcement authority to DLI and is not intended to limit the right of DLI to "pursue any judicial, administrative, or other action available with respect to an employer in the absence of a wage complaint."  RCW 49.48.085(3)(c). Unlike the discretionary authority provided by the CWPEA, the WPA requires DLI to take certain administrative actions when an employee files a wage complaint.  RCW 49.48.083(1).  A "wage complaint" is a written complaint from an employee to DLI asserting their employer violated one or more wage payment requirements.  RCW 49.48.082(11).

With certain exceptions, the WPA requires DLI to issue a citation and notice of assessment or a determination of compliance within 60 days of receiving a wage

complaint. RCW 49.48.083(1). If a citation is issued, DLI may order the employer to pay all wages owed and, if appropriate, a civil penalty. RCW 49.48.083(2), (3). If the employer disagrees with the citation and assessment, it can file an administrative appeal of the assessment. RCW 49.48.084(1).

An employee who files a wage complaint and then accepts payment from the employer is barred from initiating or pursuing their own court action or proceedings based on the wages identified in the citation and notice of assessment. RCW 49.48.083(4). To protect their right to pursue a private action, the employee may elect to terminate the wage complaint and subsequent administrative action. RCW 49.48.085.

While there are differences between the CWPEA and the WPA, both procedures authorize DLI to order an employer to pay a penalty when it determines that the failure to pay wages was willful. *See* RCW 49.48.060(4), .083(3). Under both provisions, the penalty is owed to DLI, not the employee. The penalty assessed for failure to pay or explain a wage claim becomes a liability owed to DLI, which DLI may pursue as part of, or separate from, an action to collect wages owed. RCW 49.48.060(4). Similarly, a penalty assessed for failure to pay a wage complaint is deposited into the supplemental pension fund and is not awarded to the employee. *See* RCW 49.48.083(3)(e).

2.     STATUTORY INTERPRETATION OF RCW 49.48.040(1)(b)

As noted above, the question presented is whether RCW 49.48.040(1)(b) authorizes DLI to file a lawsuit in superior court when there has not been a wage

9

assignment, a wage complaint, or an order requiring the employer to pay wages owed.

We start with the basic premise that DLI, as a state agency, "may only do that which it is authorized to do by the Legislature." *Rettkowski v. Dep't of Ecology*, 122 Wn.2d 219, 226, 858 P.2d 232 (1993); *see also Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 298, 381 P.3d 95 (2016).

Both parties agree that under the CWPEA, DLI may investigate an employer upon information of a potential wage violation under RCW 49.48.040(1)(a). *See* Appellant's Br. at 19; Resp't Br. at 24. Additionally, both parties agree that DLI has the authority to accept assignment of a wage claim from an employee who lacks the financial resources to pursue a matter on their own. *See* Appellant's Br. at 19; Resp't Br. at 24.

However, the parties dispute the meaning of RCW 49.48.040(1)(b). DLI contends that the provision grants it unrestricted authority to pursue wage violations in superior court on behalf of employees. Cannabis Green argues that absent an assigned wage claim or wage complaint, DLI must first determine and then order the employer to pay the sums owed before it can institute an action necessary for the collection of the sums.

The question presented requires us to interpret the statute. In doing so, our "fundamental objective is to ascertain and give effect to the legislature's intent." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016). "Intrepretation of a statute is a question of law that we review de novo." *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). Where the language of a statute is clear, the

legislature's intent will be derived from the plain language of the statute. *Id.* at 578. In order to determine a statute's plain meaning, courts should examine "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Dep't of Ecology v. Campbell & Gwinn*, *LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002). When determining a statute's plain meaning, we consider the ordinary meaning of words and basic rules of grammar. *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 245, 350 P.3d 647 (2015). However, if after this inquiry the plain meaning is susceptible to more than one reasonable meaning, "the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Dep't of Ecology*, 146 Wn.2d at 12.

The contested subsection provides that DLI may: "[o]rder the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed." RCW 49.48.040(1)(b). We start with the ordinary meaning of the words within the statute and basic rules of grammar. RCW 49.48.040(1)(b) bestows two powers on DLI: it may *order* payments and it may *institute* actions. Because the statute frames the powers permissively (using "may"), the powers are discretionary—DLI need not exercise either one. Because the powers are conjunctive (joined by "and"), DLI need not choose between them, it may exercise both. The question is whether the powers are dependent or independent of each other.

A plain reading of the statute indicates that the second power supplements the first. If DLI invokes RCW 49.48.040(1)(b), its first step is to order payment of wages owed. At that point, the employer may simply pay the wages in full, negating the need for the second power. However, if the employer behaves in such a manner that the second action becomes "necessary," then DLI is empowered to institute those actions. In no circumstance, however, does the statute authorize DLI to exercise only the second and not the first power. In other words, DLI cannot institute actions to collect sums that it had not previously determined to be owed and ordered from the employer.

Our interpretation of subsection (1)(b) does not require DLI to accept assignment of a wage claim or receive a wage complaint. Instead, RCW 49.48.040(1)(b) provides a third method of pursuing unpaid wages. The only prerequisite required by the statute is that DLI first order the employer to pay wages owed. DLI is then authorized to institute an action if it becomes necessary to collect the sums determined to be owed.

DLI raises several arguments in support of its position that its authority to initiate a lawsuit under RCW 49.48.040(1)(b) is plenary and independent of its authority to order the payment of wages owed. In addition to claiming that the plain language of the statute supports its position, DLI relies on the interpretive maxim that remedial statutes must be construed liberally in favor of those the statute is intended to benefit. *See Jametsky v. Olsen*, 179 Wn.2d 756, 765, 317 P.3d 1003 (2014). While we agree that the CWPEA is remedial, the preference for a liberal construction only comes into play when two

12

interpretations are equally consistent with legislative intent. *Estate of Bunch v. McGraw Residential Ctr.*, 174 Wn.2d 425, 432-33, 275 P.3d 1119 (2012). The maxim should not be "employed to defeat the intent of the legislature, as discerned through traditional processes of statutory interpretation." *Id*. at 432. Here, we do not find that RCW 49.48.040(1)(b) is susceptible to two equally compelling interpretations.

DLI also argues that legislative history supports its interpretation. But this aid to construction applies only when a statute is deemed ambiguous.[1] *Dept. of Ecology*, 146 Wn.2d at 12.

Next, DLI contends that interpreting subsection (1)(b) as requiring it to order an employer to pay wages owed before DLI is authorized to initiate a lawsuit would necessarily require DLI to issue a citation or notice of assessment with administrative appeal rights as provided separately by the WPA. DLI maintains that passage of the WPA in 2006 was not intended to limit DLI's right to pursue judicial action against an employer in the absence of a wage complaint, citing RCW 49.48.085(3).[2]

---

[1] While we conclude that the statute is unambiguous, we note that the legislative history, House Bill Report 3185 also supports our interpretation. In describing the existing CWPEA, the report notes "[t]he Department may investigate wage violations, order employers to pay, and institute actions to collect *after* a determination that sums are owed. The Department also may take assignments of wage claims and prosecute actions for employees who are financially unable to employ counsel." H.B. REP. 3185, 59th Leg., Reg. Sess. (Wash. 2006) (emphasis added).

[2] RCW 49.48.085(3): "Nothing in this section shall be construed to limit or affect . . . (b) the right of the department to pursue any judicial, administrative, or other action

13

The language in RCW 49.48.040(1)(b) existed prior to the passage of the WPA. Both before and after the WPA was passed this subsection authorized DLI to initiate an action after ordering an employer to pay wages owed and only when necessary for the collection of sums determined owed. In other words, nothing suggests that the WPA impacts the authority granted by RCW 49.48.040(1)(b).

We note, however, that the procedure set forth in RCW 49.48.060(4) has existed in substantially the same form since 1971. This subsection applies when DLI becomes "informed" of a wage claim (which may or may not be different from when a wage claim is assigned), and requires DLI to notify the employer of the claim. If the employer fails to pay the claim or provide a satisfactory explanation within 30 days, DLI may demand a penalty. The penalty becomes a separate cause of action and DLI may initiate an action to collect this penalty even without the assignment of a wage claim. *Id*. Before doing so, however, DLI must provide written notice of the wage claim and give the employer 30 days to respond. *Id*. This procedure is compatible with our reading of RCW 49.48.040(1)(b) as authorizing DLI to initiate an action only after ordering wages to be paid and when necessary to collect wages or a penalty determined to be owed.

---

available with respect to an employee that is identified as a result of a wage complaint; or (c) the right of the department to pursue any judicial, administrative, or other action available with respect to an employer in the absence of a wage complaint."

Regardless, we do not need to decide the specific procedures required when DLI orders an employer to pay wages owed under RCW 49.48.040(1)(b) because DLI does not claim to have made any attempt to order Cannabis Green to pay any wages owed.

DLI also contends that RCW 49.48.040(1)(b) does not require it to determine a precise amount owed before initiating a lawsuit. Instead, DLI contends that the precise amount owed is likely to change during litigation after discovery is conducted, and CR 8 does not require a complaint to specify the exact amount owed. Notwithstanding this argument, DLI contends that it complied with this requirement when it amended its complaint to indicate that the approximate amount owed was $318,500.

We disagree. The phrase "sums determined owed" uses the past participle of the verb "determine," indicating that at the time it becomes necessary to institute an action, the determination of sums owed has already been made. Again, we do not decide if the relief requested in a lawsuit initiated to collect sums determined owed can be modified following discovery because the plain language of RCW 49.48.040(1)(b) authorizes DLI to initiate an action only after it has ordered an employer to pay wages owed, and DLI acknowledges that it has made no attempt to order Cannabis Green to pay any wages owed.

Finally, DLI argues that Division One's decision in *Department of Labor and Industries v. Overnite Transportation Company*, 67 Wn. App. 24, 834 P.2d 638 (1992) controls the outcome here and held that DLI could initiate a lawsuit without assignment

15

of a wage claim. We agree, but this does not decide the issue presented here: whether DLI must order an employer to pay wages owed before commencing an action in superior court under RCW 49.48.040(1)(b).

In *Overnite*, DLI received wage "complaints" from 11 employees.[3] After investigating the complaints, DLI requested the employer pay $9,786.91 in overtime wages. When the employer refused, DLI filed an action on behalf of the employees. Overnite argued that the superior court could not order exemplary damages under RCW 49.52.070, which provides for double damages "in a civil action by the aggrieved employee or his [or her] assignee" because there was no evidence of a written wage assignment. *Id*. at 34 n.6. The court held that despite the lack of a wage assignment, DLI, "by virtue of its de jure authority under RCW 49.48.040(1)(b) to commence actions and to collect on behalf of employees" without assignment of a wage claim. *Id*. at 36.

*Overnite* is factually distinguishable from this case because in *Overnite*, DLI complied with the procedures in RCW 49.48.040(1)(b) and 49.48.060(4). In *Overnite*, DLI requested (ordered) the employer to pay a specific amount of unpaid wages. It was only after the employer refused, and it became necessary to collect the wages determined to be owed, that DLI referred the claims to the attorney general for litigation. *Id*. at 24.

---

[3] *Overnite* was decided in 1992 before the WPA was adopted in 2006, so the opinion's reference to wage "complaints" received by employees should be distinguished from the term "wage complaints," which is specifically defined in the WPA. *See* RCW 49.48.082.

16

*Overnite* is also legally distinguishable. *Overnite* held that DLI could pursue exemplary damages without assignment of a wage claim. *Id.* at 36. And while *Overnite* held that DLI brought the action "by virtue of its de jure authority under RCW 49.48.040(1)(b)," this was not a holding that DLI's authority to sue under this subsection was plenary. Critically, the *Overnite* court did not decide whether this subsection required DLI to first order an employer to pay wages owed before commencing an action on behalf of employees.

*Overnite*'s holding is not incompatible with our holding today. We do not hold that DLI's authority to sue under RCW 49.48.040(1)(b) requires an assignment of a wage claim. Instead, the clear language of this subsection requires DLI to first order the employer to pay wages owed. That is the only prerequisite to DLI's authority to initiate a lawsuit under RCW 49.48.040(1)(b).

We conclude that RCW 49.48.040(1)(b) is unambiguous. Under the plain language of the statute, the legislature intended to provide DLI the discretionary authority to initiate an action only after ordering an employer to pay wages and then for the limited purpose of collecting the sums determined to be owed. Since DLI did not order Cannabis Green to pay wages determined to be owed, it cannot initiate an action to collect such sums.

17

3.    DISMISSAL OF DLI'S COMPLAINT

DLI contends that even if it failed to comply with the statutory requirement to

order Cannabis Green to pay wages owed, dismissal is not warranted because the

procedures are not jurisdictional and Cannabis Green failed to show prejudice.  Cannabis

Green contends that DLI's obligation to order wages to be paid is a prerequisite to filing a

lawsuit under RCW 49.48.040(1)(b).  We agree with Cannabis Green.

The legislature cannot restrict a court's constitutional power and authority to hear

a case.  *Freedom Found. v. Teamsters Local 117 Segregated Fund*, 197 Wn.2d 116, 141,

480 P.3d 1119 (2021).  However, "'the legislature can prescribe prerequisites to a court's

exercise of . . . jurisdiction.'"  *Id*. (quoting *Buecking v. Buecking*, 179 Wn.2d 438, 448,

316 P.3d 999 (2013).  Where a statute creates procedures for the resolution of particular

disputes, courts require substantial compliance of the procedure before exercising

jurisdiction over the case.  *Id*.  The failure to comply with a statutory prerequisite to filing

suit is an affirmative defense as opposed to a jurisdictional bar.  *Id*. at 140.  When the

affirmative defense is timely raised, "plaintiffs bear the burden of showing they have

substantially complied with statutory prerequisites, and failure to do so generally bars

their claims."  *Id*. at 137-38.

DLI does not deny that its authority to sue Cannabis Green in this case comes

from RCW 49.48.040(1)(b).  However, this statute creates a statutory prerequisite to

DLI's authority to initiate an action.  DLI must first order the employer to pay wages

18

owed. Initiating a lawsuit is only authorized if it becomes necessary to collect on sums determined to be owed.

There is no dispute that Cannabis Green timely challenged DLI's compliance with RCW 49.48.040(1)(b). And DLI does not claim to have complied with this prerequisite. Consequently, DLI's claim for wages is barred.

4.      ATTORNEY FEES

Both parties request attorney fees on appeal. In Washington, a prevailing party on appeal may recover attorney fees "authorized by statute, equitable principles, or agreement between the parties." *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009).

We deny DLI's requeste for attorney fees because it does not prevail on appeal.

We also deny Cannabis Green's request for attorney fees because it does not provide any statutory authority for awarding such fees. Under RAP 18.1, a prevailing party may be entitled to attorney fees. However, the provisions in RAP 18.1 "make clear that a party seeking fees on appeal must clearly set forth the request and the basis for same before the appellate court." *Id*. at 485. "A party's failure to comply with the rule's provisions warrants denial of [its] fee request." *Id.* at 485-86 (citing *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc*., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998) (noting that RAP 18.1 requires a party requesting fees to provide argument and citation to authority in

a separate section of the brief to apprise the appellate court of the appropriate grounds for an award of fees).

In its request for fees, the only authority cited by Cannabis Green is RAP 18.1. This rule does not provide an independent basis for awarding fees.

Affirmed.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.J.

_____
Pennell, J.