[Nos. 66626-6-I; 67820-5-I.   Division One.   February 4, 2013.]

REBA WEISS, *Respondent*, v. JUDITH A. LONNQUIST ET AL.,
*Appellants*.

346

*Judith A. Lonnquist* (of *Law Offices of Judith A. Lonnquist PS*) and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*), for appellants.

*Robert B. Gould,* for respondent.

*Jeffrey L. Needle* and *Michael C. Subit* on behalf of Employment Lawyers Association, amicus curiae.

¶1 BECKER, J. — A civil lawsuit for wrongful discharge in violation of public policy is available to an employee only where no other adequate remedy exists to vindicate the public policy at issue. This rule requires reversal of a jury

verdict that awarded damages to respondent Reba Weiss for her discharge from employment by appellant Judith Lonnquist's law firm.

¶2 Weiss claims her lawsuit protected the public policy requiring attorneys to be candid with the court. While this appeal was pending, the Supreme Court issued its opinion in *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 259 P.3d 244 (2011). Guided by *Cudney*, we hold that the Washington State Bar Association's system for disciplining attorneys who violate the Rules of Professional Conduct is an adequate safeguard for the public policy in question. For this reason, the tort of wrongful discharge in violation of public policy was unavailable to Weiss as a matter of law.

## FACTS

¶3 Reba Weiss was hired in 2004 as a part-time, "of counsel" attorney by the Law Offices of Judith A. Lonnquist PS, a labor and employment law firm. The events giving rise to this appeal revolve around the attorney-client relationship between the law firm and a client referred to as Jane Doe.

¶4 On November 22, 2004, one of Jane Doe's supervisors at work told her they were "exploring options" regarding her future with the employer, one of which was severance. Jane Doe was shown a policy providing for a 3-month severance. Two days later, Jane Doe's physician told her she would need surgery on her left hip to treat a chronic osteoarthritis condition. She would be off work for several months. Jane Doe had more than 500 hours of accrued sick leave that she would be entitled to use during her convalescence, so long as she was still employed.

¶5 On November 29, Jane Doe sent a fax to Lonnquist's office, stating that she needed to speak with Lonnquist urgently, as she was "facing a layoff *tomorrow* and need to delay so that I can take sick leave/medical leave for surgery." Lonnquist advised Jane Doe to put in a request for medical

leave immediately. Jane Doe took this advice. She contacted her employer's personnel department to request a leave to have the hip surgery. The next day, Jane Doe was informed that her medical leave request had been denied and that her employment was terminated, effective at once and without severance. Lonnquist filed a lawsuit on behalf of Jane Doe, alleging disability discrimination and retaliation.

¶6 In 2005, Weiss's status at the law firm changed from part time to full time. Lonnquist gave her an employment contract. In 2006, the contract expired and Weiss became an at-will employee. In July 2006 and January 2007, Lonnquist criticized Weiss severely for lack of productivity.

¶7 In August 2007, Lonnquist assigned Weiss the task of drafting a summary judgment response in the Jane Doe case. The employer's motion asserted that by the time Jane Doe requested medical leave, she had already been advised that she would be terminated for reasons unrelated to her disability, and therefore the termination was neither discriminatory nor retaliatory. Reviewing the case file, Weiss saw Jane Doe's deposition testimony that she believed her termination had to do with her disability and her request for medical leave. Weiss concluded that this statement was perjury because the initial faxed message from Jane Doe indicated that she knew she was facing a layoff before she requested medical leave. Weiss further concluded Lonnquist fostered Jane Doe's perjury by defending her deposition and violated her professional duties by filing the complaint and assisting Jane Doe in the case.

¶8 On August 6, 2007, Weiss told Lonnquist she was unwilling to work on Jane Doe's case because of the ethical issue. Lonnquist, according to Weiss, said she was "not happy about this." Lonnquist relieved Weiss of the assignment and wrote the summary judgment response herself. Lonnquist's view was that Jane Doe did not commit perjury because she did not know that she would be *terminated,* as opposed to being given the 3-month severance that had been discussed. The severance policy shown to Jane Doe by

her supervisor before she made the leave request would have offered Jane Doe various benefits not present in a termination, including a 90-day written notice of termination and 3 months of severance pay. Lonnquist contends these are factors that made Jane Doe's case legitimate, and Weiss could have learned about them if she had asked Lonnquist or Jane Doe for an explanation.

¶9 On August 20, 2007, Lonnquist gave Weiss a written 30-day notice of termination. On August 22, Lonnquist gave Weiss a memo, informing her that she was placing her on a "sliding scale" salary until her termination date. On August 23, Weiss reported to work but went to the emergency room complaining of severe chest pain. Her doctor advised her not to return to the law firm. After an exchange of e-mails in the days that followed, Weiss asked Lonnquist to stop contacting her directly and stated, "You will be hearing from my attorney soon."

¶10 On August 28, 2007, Lonnquist posted an announcement on the listservs of two Washington lawyer associations stating that Weiss was no longer employed by the firm. She said that the circumstances of Weiss's departure "have become more difficult than I would have hoped." Less than a month later, Weiss sent a message to the same listservs, announcing that she had joined a different law firm.

¶11 Weiss considered filing a bar complaint against Lonnquist. She decided against it because, as she explained in her deposition, "I wanted to pursue a civil action and I knew that they would put the bar complaint on hold if there was a civil action pending." She believed the bar process was inadequate because it would not address the wrongful termination. In May 2008, Weiss sued Lonnquist and her law firm, alleging wrongful termination in violation of public policy, willful withholding of wages, defamation, outrage, and negligent infliction of emotional distress. Lengthy litigation ensued, including an appeal in which this court rejected Lonnquist's effort to compel arbitration

based on a clause in the expired employment contract. *Weiss v. Lonnquist*, 153 Wn. App. 502, 224 P.3d 787 (2009).

¶12 In May 2010, the court granted in part Lonnquist's motion for partial summary judgment, resulting in dismissal of the claims for outrage and negligent and intentional infliction of emotional distress. In November 2010, the court denied Lonnquist's motion for summary judgment dismissal of the wrongful discharge claim. A 10-day trial was held in November and December 2010. The court granted Lonnquist's motion to dismiss the defamation claim after Weiss rested her case.

¶13 The jury found for Weiss on her claim of wrongful discharge and her wage claims. The court entered judgment for damages totaling $36,465.26. Of this total, $16,250.00 was for emotional distress caused by the wrongful discharge. The remainder was for wages lost as a result of the wrongful discharge and wages willfully withheld, doubled by the court under RCW 49.52.070. The court awarded Weiss attorney fees of $128,386.00. Liability for damages and attorney fees was imposed both upon Lonnquist in her personal capacity and upon her law firm.

¶14 This appeal followed.

## THE PUBLIC POLICY TORT CLAIM

¶15 Weiss was an at-will employee of Lonnquist's law firm when she was fired. Under the common law, an employer can fire an at-will employee for any reason without incurring liability. *Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). An exception to this rule has developed, providing that employees may not be discharged for reasons that contravene public policy. The exception is a narrow one, and courts must " 'proceed cautiously.' " *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984) (emphasis omitted), quoting *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625 (1982).

■ ■ ¶16 Wrongful discharge in violation of public policy is an intentional tort. *Korslund v. DynCorp Tri-Cities Servs., Inc.,* 156 Wn.2d 168, 178, 125 P.3d 119 (2005). In 1996, the Supreme Court set forth the four elements of the tort:

> (1) The plaintiffs must prove the existence of a clear public policy (the clarity element).
>
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element).
>
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element).
>
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

*Gardner v. Loomis Armored, Inc.,* 128 Wn.2d 931, 941, 913 P.2d 377 (1966) (emphasis and citations omitted).

## THE JEOPARDY ELEMENT

■ ¶17 The mandate for courts to "proceed cautiously" remains in force, and it includes the jeopardy element. *Cudney,* 172 Wn.2d at 529-30. The jeopardy element sets up a relatively high bar. A plaintiff must show that she engaged in particular conduct and the conduct directly relates to the public policy or was necessary for the effective enforcement of the public policy. The plaintiff must prove that discouraging the conduct that she engaged in would jeopardize the public policy. Of particular importance here, this means the plaintiff also must show that other means of promoting the public policy are inadequate. *Korslund,* 156 Wn.2d at 181-82. If there are other adequate means available, the public policy is not in jeopardy and a private cause of action need not be recognized. *Korslund,* 156 Wn.2d at 184. "The jeopardy element guarantees an employer's personnel management decisions will not be challenged unless a public policy is genuinely threatened." *Gardner,* 128

Wn.2d at 941-42. "The question of whether adequate alternative means for promoting a public policy exist presents a question of law as long as 'the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy.' " *Cudney*, 172 Wn.2d at 528-29, quoting *Korslund*, 156 Wn.2d at 182.

¶18 When Lonnquist moved for summary judgment dismissal of Weiss's wrongful discharge claim, she argued in part, citing *Korslund*, that Weiss could not satisfy the jeopardy element because the disciplinary process of the state bar association was an adequate means to promote the public policy of requiring attorneys to be candid with the court.

¶19 On September 1, 2011, during the pendency of this appeal, the Supreme Court issued its ruling in *Cudney*. The plaintiff in *Cudney* was terminated after he reported to superiors that he had seen his manager driving a company vehicle while visibly drunk. The plaintiff claimed he had a cause of action for wrongful discharge based on the public policies embodied in the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, and the state statute that criminalizes driving under the influence. Following *Korslund*, the court ruled that the plaintiff's claim failed the adequacy analysis as a matter of law. WISHA's purpose is to ensure workplace safety. The court held there were two public policies underlying WISHA— worker safety and protecting workers from retaliation for raising safety concerns—and both were adequately protected by the "robust" remedies available under WISHA and its accompanying regulations. *Cudney*, 172 Wn.2d at 536. And the public policy concern for prevention of drunk driving was adequately protected by police enforcement mechanisms. *Cudney*, 172 Wn.2d at 537-38.

¶20 We permitted the parties to submit supplemental briefs to address *Cudney*. Lonnquist made a supplemental assignment of error to the court's denial of her motion for

summary judgment dismissal of the wrongful discharge claim. Lonnquist's supplemental assignment of error raises the dispositive issue in this appeal. We conclude the trial court erred by failing to grant her motion for summary judgment.

¶21 Where a denial of summary judgment is based on the presence of material, disputed facts, it will not be reviewed when raised after a trial on the merits. *Johnson v. Rothstein*, 52 Wn. App. 303, 306, 759 P.2d 471 (1988); *Washburn v. City of Federal Way*, 169 Wn. App. 588, 609, 283 P.3d 567 (2012), *petition for review filed*, No. 87906-1 (Wash. Sept. 25, 2012). Where the pretrial order denying summary judgment is premised on a question of law, however, the court can review that order even after a full trial on the merits. *McGovern v. Smith*, 59 Wn. App. 721, 735 n.3, 801 P.2d 250 (1990).

¶22 Just as the issue of adequacy of other enforcement mechanisms was decided in *Korslund* and *Cudney* as a matter of law, here too the issue is not a factual question for a jury. The inquiry is whether existing laws are adequate to protect the public policy in question. Because this is a matter of law for the court to decide, it is appropriate for this court to review the pretrial order denying Lonnquist's motion for summary judgment.

¶23 Washington State has an established system for investigating and adjudicating alleged violations of the Rules of Professional Conduct. As attorneys, both Lonnquist and Weiss are subject to these rules. The public policy Weiss invokes as the primary basis for her tort claim against Lonnquist is embodied in RPC 3.3, entitled "Candor Toward the Tribunal," although she also cites RPC 3.1, 4.1, 5.1, and 8.4. The rule provides in relevant part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client unless such disclosure is prohibited by Rule 1.6;

. . . .

(4) offer evidence that the lawyer knows to be false.

RPC 3.3.

## 1. The bar disciplinary process was available to Weiss

¶24 A rule entitled "Reporting Professional Misconduct" provides, "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, should inform the appropriate professional authority." RPC 8.3(a). However, the rule goes on to say that a lawyer is not permitted to report the professional misconduct of another lawyer "if doing so would require the lawyer to disclose information otherwise protected by Rule 1.6." RPC 8.3(c).

¶25 Weiss contends the Rules of Professional Conduct made the bar disciplinary process unavailable to her under the circumstances. Relying on RPC 1.6 and *In re Disciplinary Proceeding Against Schafer*, 149 Wn.2d 148, 66 P.3d 1036 (2003), Weiss contends it was not possible for her to file a bar complaint because to do so would have meant unethically disclosing information about Jane Doe.

¶26 The rule provides in relevant part as follows:

(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b) A lawyer to the extent the lawyer reasonably believes necessary:

. . . .

(2) may reveal information relating to the representation of a client to prevent the client from committing a crime;

(3) may reveal information relating to the representation of a client to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;

. . . .

(6) may reveal information relating to the representation of a client to comply with a court order.

RPC 1.6.

¶27 Because of the exceptions in RPC 1.6(b), the protection accorded to client information in RPC 1.6(a) is not the insuperable obstacle that Weiss portrays it to be. Weiss believed Jane Doe had committed perjury and was planning to continue her perjury, with Lonnquist's complicity and to the detriment of Jane Doe's former employer, as the case went forward. Under RPC 1.6(b)(2) and (b)(3), Weiss was permitted to reveal the information she had relating to her representation of Jane Doe, to the extent she reasonably believed necessary.

¶28 Because the information was not protected by RPC 1.6, Weiss could have—and per RPC 8.3(a) "should" have—informed the state bar association about Lonnquist's alleged role in suborning perjury by Jane Doe. Lonnquist would then have the right to reveal to the bar association additional information relating to her representation of Jane Doe to the extent she reasonably believed necessary to establish her defense. RPC 1.6(b)(5) & cmt. 10. Under the bar association's own Rules for Enforcement of Legal Conduct, the bar association would then have the obligation to keep the information about Jane Doe strictly confidential, unless Jane Doe consented to the release. ELC 3.2(b).

¶29 Weiss's reliance on *Schafer*, which was decided under RPC 1.6, is also misplaced. The attorney in that case was

crusading for the removal of a corrupt judge. He was suspended from the practice of law for six months because, in violation of RPC 1.6, he disclosed a former client's confidential remarks about the judge in a very public and ostentatious manner—not only to the state bar association, but also to "newspapers and a sundry assortment" of public officials. *Schafer*, 149 Wn.2d at 163. The attorney's reports to criminal law enforcement officials were unnecessary to accomplish his objective of having the judge investigated. *Schafer*, 149 Wn.2d at 164. The court concluded, however, that the attorney was entirely justified in reporting the allegations to the state Commission on Judicial Conduct: "Schafer could and should have appropriately reported Anderson's alleged indiscretions to the tribunal or the appropriate professional authority, without revealing the confidential information of his own client to the prosecutor's office, the [Federal Bureau of Investigation], the [Internal Revenue Service] and the press." *Schafer*, 149 Wn.2d at 165. To the extent Weiss was in an analogous position, *Schafer* indicates it would have been appropriate for her to report Lonnquist's alleged misconduct to the bar association.

¶30 Instead of reporting Lonnquist to the state bar, Weiss chose to begin a civil lawsuit against Lonnquist. In the course of that lawsuit, she herself demanded that Lonnquist disclose confidential information about Jane Doe. The court ordered disclosure, conditioned upon redaction of Jane Doe's true name. It is hard to see how Jane Doe's confidential information was better protected in a public trial than it would have been in the relative privacy of an investigation and hearing by the bar association.

## 2. The bar disciplinary process is an adequate means of promoting the public policy rooted in the rules of professional conduct

¶31 When Weiss refused to engage in the conduct she perceived as unethical, the public policy she was promoting was the policy demanding candor to the tribunal as set

forth in the Rules of Professional Conduct. And she concedes that the disciplinary rules of the bar "may offer an adequate alternative means of protecting that public policy because the Washington State Bar Association has the authority and the ability to sanction an attorney who is found to be in violation of the rule."[1] This concession is appropriate and significant because it is ultimately dispositive.

¶32 Weiss contends, however, that there is another public policy at stake for which the disciplinary rules provide no remedy. Weiss claims there is a general public policy that employees should be protected from retaliation when they refuse to comply with the employer's directive to engage in unethical conduct. The bar association had the power to discipline Lonnquist, but it did not have the power to reinstate Weiss in her job or compensate her for losing it. Weiss argues that her case is to be distinguished from *Cudney* on the basis that the bar disciplinary process provides no remedy for retaliation.

¶33 In *Cudney*, the plaintiff claimed to be an enforcer of the public policy embodied in WISHA that protects employees who report safety violations. An employee who believes he or she has been terminated for exercising a right discussed in WISHA can file a complaint with the Department of Labor and Industries. If the investigation supports the employee's claim, the director of the department must file suit against the person who violated the statute. If the director does not believe a violation has occurred, the employee may bring a suit. Either way, the court has broad power to order relief personal to the employee. *Cudney*, 172 Wn.2d at 531-32, citing RCW 49.17.160(2). The WISHA remedies are thus even more comprehensive than the similar remedies discussed in *Korslund*.

---

[1] Respondent's Supplemental Brief Re: Cudney at 1. Weiss represents in her briefing before this court that she "has every intention" of reporting Lonnquist to the bar association as soon as her civil lawsuit has completed. Respondent's Supplemental Brief at 4 n.4.

¶34 It is true that the bar association provides no comparable remedy offering personal relief and protection from retaliation for an attorney who refuses her supervisor's directive to engage in conduct she perceives as unethical. But we do not read *Cudney* as holding that alternative remedies, to be adequate, must provide relief personal to the employee. The Supreme Court has repeatedly emphasized that *it does not matter* whether or not the alternative means of enforcing the public policy grants a particular aggrieved employee any private remedy. In *Hubbard v. Spokane County*, 146 Wn.2d 699, 50 P.3d 602 (2002), the Supreme Court was utterly clear on this point. "The other means of promoting the public policy need not be available to a particular individual so long as the other means are adequate to safeguard the public policy." *Hubbard*, 146 Wn.2d at 717; *see also Korslund*, 156 Wn.2d at 183; *Cudney*, 172 Wn.2d at 538. *Cudney* maintains the "strict adequacy standard" of the court's previous cases. *Cudney*, 172 Wn.2d at 530. The plaintiff must show that the actions she took were the " '*only available adequate means*' " to promote the public policy. *Cudney*, 172 Wn.2d at 530, quoting *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 222, 193 P.3d 128 (2008).

¶35 The public policy tort may be available where an employee is discharged in retaliation for refusing to commit an illegal act. *Gardner*, 128 Wn.2d at 936. But Weiss cites no case supporting her theory that the public policy tort is available to an employee who is discharged in retaliation for refusing to commit an illegal act where that employee has refused to engage with a professional disciplinary system specifically designed to receive and address complaints about the employer.

¶36 In *Cudney*, the court held that the mechanisms and consequences of law enforcement—police investigation, arrest, prosecution, fines, license suspension, and loss of social status—were adequate to address the public policy against drunk driving. The mechanisms and consequences

of the bar association's disciplinary process are similar. A civil suit cannot be the only available adequate means to vindicate the Rules of Professional Conduct when the bar association itself is specifically entrusted with the enforcement of those rules, has expertise in interpreting them, and stands ready to investigate complaints.

¶37 The *Cudney* court found it "notable" that the employee's report of drunk driving was made to his employer, not to the police. The court said it "might have a different case if Cudney acted pursuant to or in service of enforcement of the state's DUI laws and faced termination for that." *Cudney*, 172 Wn.2d at 536 n.4. In that situation, it would be arguable that Cudney's report was necessary for the effective enforcement of the public policy against drunk driving. Cudney's problem was that he "acted outside" the system that was adequate to promote the policy. *Cudney*, 172 Wn.2d at 536 n.4. The same is true of Weiss. We might have a different case if Weiss had reported Lonnquist to the bar association and had been discharged for taking that action. Weiss would then have been in a better position to argue that her civil suit was *necessary* for the effective enforcement of public policy. But Weiss decided against filing a bar complaint, preferring to pursue a civil action. Her theory that she was enforcing a public policy against retaliation simply circles back to the argument that a remedy is inadequate unless it provides compensation and other individualized relief to the aggrieved employee. As discussed above, the Supreme Court has rejected that argument.

¶38 Because Weiss failed as a matter of law to satisfy the jeopardy element of the tort of wrongful discharge, her suit should have been dismissed on summary judgment.

¶39 Our holding that the claim of wrongful discharge should have been dismissed as a matter of law requires reversal of the judgment against Lonnquist and her law

office to the extent of damages and lost wages awarded for wrongful discharge.[2]

## DISCOVERY ORDERS

¶40 During discovery, Weiss requested production of documents from the law firm's file on Jane Doe, including retainer agreements, all billing records describing work performed by the law firm on the matter, the complete pleadings and discovery file, and the facsimile Jane Doe sent on November 29, 2004. Lonnquist moved for a protective order, arguing that the material was protected by the attorney-client privilege and she could not ethically disclose it. On June 25, 2010, the trial court denied the motion for a protective order. Lonnquist was ordered to produce the information "with the client's name redacted."

¶41 On August 12, 2010, Weiss began Lonnquist's deposition. Lonnquist refused to answer any question about Jane Doe that she felt was not governed by the June 25 order compelling production. On August 17, Lonnquist moved for "clarification" of the June 25 order. On August 18, Weiss moved to compel deposition answers and requested sanctions.

¶42 On August 31, the trial court ordered Lonnquist to answer "any and all questions propounded to her at the continuation of her deposition relating to Jane Doe," adding only that Lonnquist should not reveal Jane Doe's contact

---

[2] As a result, several other assignments of error by Lonnquist need not be addressed. These include her argument that the court erred in entering judgment for wrongful discharge damages against her individually as well as against her law firm, her argument that she was unduly limited in access to medical records that contained evidence potentially relevant to Weiss's claim of emotional distress, and her argument that the damages for lost wages from the wrongful discharge should not have been doubled. Lonnquist has assigned error to a number of jury instructions given at trial. Because we conclude the case should have been dismissed on summary judgment, it is unnecessary to address the instructional issues. We also decline to decide Lonnquist's motion to strike various undocumented assertions of alleged facts in Weiss's supplemental brief on appeal; this court disregards unsupported statements without being prompted by a motion to strike.

information. The court sanctioned Lonnquist $300 and ordered her to pay the cost of resuming the deposition.

¶43 Lonnquist assigns error to the June 25 order compelling production of information and the August 31 order imposing sanctions of $300 and deposition costs. This court reviews pretrial discovery orders for manifest abuse of discretion. *Gillett v. Conner*, 132 Wn. App. 818, 822, 133 P.3d 960 (2006).

¶44 If a motion for a protective order is denied, "the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." CR 26(c). Decisions either denying or granting sanctions for discovery abuse are "generally reviewed for abuse of discretion." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993).

¶45 The June 25 order compelling production was not an abuse of discretion. The facts relating to the underlying Jane Doe representation, which Weiss claimed triggered her termination, and in which Lonnquist claimed there was nothing at all untoward, were plainly relevant. RPC 1.6, the rule of professional conduct governing attorney disclosures of confidential client information, expressly permits an attorney to "reveal information relating to the representation of a client to comply with a court order." RPC 1.6(b)(6). The court took reasonable account of the need for client confidentiality by providing for redaction of identifying information.

¶46 The August 31 order, likewise, was not an abuse of discretion. If Lonnquist believed the June 25 order was unclear in its scope, she should not have waited until August 17 to ask for clarification. Her delay caused unnecessary expense for Weiss.

## CONTEMPT

¶47 By agreement of the parties, Lonnquist's deposition was scheduled to resume on September 8, 2010. After receiv-

ing the court order of August 31, Lonnquist asked Weiss to postpone the deposition. She said she would not comply with the court's order to disclose information about Jane Doe for at least 30 days. In taking this position, Lonnquist was relying on RPC 1.6 comment 13. Comment 13 refers to the possibility of a client asking the attorney to appeal a discovery ruling requiring disclosure of client information. Lonnquist had contacted Jane Doe to inform her of the order of August 31 and to alert her that if she wanted to appeal the discovery ruling, it would have to be done within 30 days. Jane Doe said she would consider whether or not to file an appeal and instructed Lonnquist to refrain from disclosing information about her in the meantime.

¶48 On September 3, Weiss moved for a finding of contempt. On September 13, the court granted Weiss's motion, held Lonnquist in contempt of the order of August 31, and fined her $2,100.

¶49 Weiss scheduled Lonnquist's continued deposition for September 27. On September 24, Lonnquist received a letter from Jane Doe authorizing her to disclose information regarding Lonnquist's work on her case. With the perceived ethical conflict thus resolved, Lonnquist proceeded to participate in the deposition and answer the questions.

¶50 Lonnquist assigns error to the contempt order of September 13, 2010. Disobedience of a court order is grounds for a court to order a sanction for contempt of court. RCW 7.21.010, .020. The standard of review is abuse of discretion. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). A court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons. *Moreman*, 126 Wn.2d at 40.

¶51 Although the court did not enter findings of fact supporting the contempt order, it is apparent that the court perceived Lonnquist as disobedient to the order of August 31. That order directed Lonnquist to fully answer questions about Jane Doe, and it did not provide for a 30-day delay of

that order. In the abstract, comment 13 gave Lonnquist a reasonable basis for refusing to furnish unlimited answers about her representation of Jane Doe until the 30-day appeal period expired or Jane Doe gave her consent. But Lonnquist does not explain why, when she knew via the June 25 order that she was being ordered to produce Jane Doe's information, she waited until August 31 to start the 30-day clock running. The discovery deadline was rapidly approaching. Under these circumstances, the court could reasonably perceive that Lonnquist's professed desire to give Jane Doe a month to think about filing an appeal was, in reality, a stalling tactic in contempt of the August 31 order. We affirm the order imposing sanctions for contempt.

## MOTION TO AMEND

¶52 On July 28, 2010, Lonnquist moved to amend her answer to add a counterclaim of defamation and a defense of after-acquired evidence. The court denied the motion on August 13, 2010, stating that Lonnquist had already "had many opportunities to timely raise this issue, including May 21, 2010," the date when the court heard the parties' cross motions for summary judgment. Lonnquist contends this was error since the discovery cut off was not until October 11, 2010, and both parties were still actively engaged in discovery.

¶53 Our review is for abuse of discretion. *Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App. 242, 262, 274 P.3d 375 (2012). Lonnquist had known the facts underlying these two new claims for about two years before she moved to amend. Adding new topics to litigation that was already bogged down in contentious discovery would likely have prejudiced Weiss's ability to prepare her case. We conclude the court did not abuse its discretion by denying Lonnquist's motion to amend.

## ATTORNEY FEES

¶54 Lonnquist assigns error to the attorney fee award on various grounds. In light of our decision to reverse the

judgment on the wrongful discharge claim, the judgment for attorney fees must be reversed and the award thoroughly reconsidered in its entirety by the trial court. We therefore do not address Lonnquist's arguments that go to calculation of the lodestar, segregation of compensable claims from noncompensable claims, the denial of her request to produce Weiss's fee agreement, the proper rate of judgment interest, the propriety of imposing prejudgment interest on an award of attorney fees, and the issue of whether the phrase "said employer or former employer" in RCW 49.48.030 includes Lonnquist personally or only her law firm. If these issues arise again on remand, the trial court should consider them anew in the altered posture of the case.

¶55 Weiss seeks an award of fees and costs on appeal under RCW 49.52.070. That statute provides for an award of fees in actions to recover "willfully" withheld wages. RCW 49.52.050(2); *Dep't of Labor & Indus. v. Overnite Transp. Co.*, 67 Wn. App. 24, 34, 834 P.2d 638 (1992), *review denied*, 120 Wn.2d 1030 (1993). While Weiss's right to recover withheld wages was at issue before the trial court, it is not implicated in this appeal. Because none of the fees Weiss incurred on appeal were necessary to defend her judgment for withheld wages or her right to attorney fees as the prevailing party on that claim, her request is denied.

¶56 The judgment on the verdict and the judgment for attorney fees are reversed and remanded for further proceedings consistent with this opinion.

APPELWICK and DWYER, JJ., concur.

Review denied at 178 Wn.2d 1025 (2013).