## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| In re Guardianship of | ) | No. 33272-1-III |
| | ) | |
| STEPHANIE E. JANZEN. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — Rommel Paisley Westlaw a/k/a Randles Psychedelic Tompkins a/k/a Randall Craig Nutter (Mr. Tompkins) appeals the trial court's amended injunction that generally prohibits him from publishing "personal or defamatory information" about Stephanie Janzen (an incapacitated person), Charlotte Wolverton (her guardian), or Tom Wolverton (her trustee). We hold that the amended injunction, to the extent it prohibits only harassing or defamatory speech, does not offend First Amendment principles. However, we remand to the trial court for it to define "personal" or otherwise narrow the scope of the injunction so it does not prohibit protected speech.

### FACTS

Ms. Janzen is an incapacitated person. In 2008, Mr. Tompkins posted on his websites personal and defamatory information about Ms. Janzen. After Ms. Wolverton,

her legal guardian, took legal measures to protect Ms. Janzen, Mr. Tompkins posted

defamatory information on his websites about the Wolvertons. At Ms. Wolverton's

request, a trial court granted a permanent injunction against Mr. Tompkins's activities.

The court found that the privacy interests of Ms. Janzen and the Wolvertons outweighed

Mr. Tompkins's interest in maintaining his websites. The court also found that the

defamatory information posted by Mr. Tompkins amounted to harassment and was not

protected by the First Amendment.

> Section III.2 of the injunction prohibited the following activities:

> Randles P. Tompkins is permanently enjoined from harassing Stephanie E.
> Janzen, Charlotte Wolverton as the guardian of Stephanie E. Janzen and
> Tom Wolverton as the trustee for Stephanie E. Janzen. The injunction
> includes but is not limited to: contacting 3rd parties requesting information
> regarding Stephanie E. Janzen, Charlotte Wolverton or Tom Wolverton;
> providing personal information regarding Stephanie E. Janzen, Charlotte
> Wolverton or Tom Wolverton to 3rd parties; filing documents in the above
> entitled action seeking to have Charlotte Wolverton removed as the
> guardian of Stephanie E. Janzen; or filing documents in the above entitled
> action seeking to have Tom Wolverton removed as the trustee of Stephanie
> E. Janzen.

Clerk's Papers (CP) at 58-59. Section III.7 of the injunction prohibited Mr. Tompkins

"from posting the websites www.spokanestalker.com and www.valentinesdaystalker.com

on the internet for public viewing." CP at 59.

In early 2014, Mr. Tompkins filed a motion to vacate the 2008 permanent

injunction. He claimed that the prohibition on publishing on his websites was an

2

unconstitutional prior restraint on speech because (1) the lawfully obtained and truthful information was part of the public record, and (2) the order did not specify the type of information that could not be published, but instead prohibited all information.

Ms. Wolverton, in her capacity as guardian, submitted a written objection to the motion. Ms. Wolverton argued that Ms. Janzen has not yet received actual relief intended by the injunction because Mr. Tompkins was posting the same information under different websites, as well as adding the same type of defamatory material. Thus, Mr. Tompkins evaded the purpose of the injunction. In support, Ms. Wolverton submitted screen shots of one of Mr. Tompkins's new websites, www.valentinesdayontrial.com. Ms. Wolverton also maintained that Mr. Tompkins was in contempt of court because he did not request or obtain approval before filing the motion to vacate the injunction.

On March 28, 2014, the court held a hearing on the motion to vacate. Mr. Tompkins explained that he was not asking the court to vacate the entire injunction, but instead only the portion that ordered him to remove two websites in their totality. He asserted that the websites were part of the business he operates and contained other information. He also asserted that the order failed to identify any information on the websites that was not protected speech. Mr. Tompkins asked that the court narrowly tailor the order to identify exactly what information he could post on the Internet.

3

In response, Ms. Wolverton identified personal information on Mr. Tompkins's websites, including dates of birth and places of work. She also identified disparaging comments about being drugged, taking money from trust funds, and sexual activities. Ms. Wolverton believed that posting this information was in direct violation of the prior order, and that Mr. Tompkins attempted to get out of the intent of the order by changing one letter in the parties' names or in the names of their places of employment.

In its oral ruling, the trial court found that the restrictions on the websites were appropriate. The court noted the importance of First Amendment rights, but found that the rights were not absolute and that harassing and defamatory speech is not constitutionally protected. The court found that the restrictions were narrowly tailored and appropriate to address the specific instances of harassment by Mr. Tompkins. The court set a later date for the contempt hearing.

On April 25, 2014, Ms. Wolverton formally filed a motion for contempt and modification of the permanent order. Ms. Wolverton claimed that Mr. Tompkins violated both the express language and the spirit of the permanent injunction by operating new websites containing personal and defamatory information about Ms. Janzen and the Wolvertons. Ms. Wolverton asked the court to modify and clarify the injunction to specify the type of harm the injunction was intended to prevent. Ms. Wolverton

presented screenshots from websites that were similar to the ones initially created by Mr. Tompkins and evidence that these websites were operated under Mr. Tompkins's aliases.

Mr. Tompkins argued that he complied with the court order because he did not post any new information on the specific websites listed in the order. He also contended that he did not violate the spirit of the injunction because he did not post information that was personal or derogatory but instead published public information for individuals who may have an interest in the legal system.

On May 9, 2014, the trial court held a show cause hearing to address the motion for contempt and modification of the permanent injunction. Although this hearing appears to be of central importance to this appeal, the parties have elected not to have this hearing transcribed and sent to this court. From what we can discern, the parties submitted declarations and orally argued the merits of their respective positions to the court. The court granted Ms. Wolverton's motion and on May 15, 2014, entered written findings of fact and conclusions of law. The court found that Mr. Tompkins developed and published 11 additional websites that were substantially similar to the 2 original websites identified in the 2008 court order, with 6 of the new websites being created within 2 months of the show cause hearing. The court recognized that these new websites were registered under several different names, but that Mr. Tompkins created the new websites and used the aliases in an attempt to circumvent the 2008 permanent

5

injunction. The court found that Mr. Tompkins controlled the publishing and content of the new websites and had the ability to remove their content from public viewing.

The trial court found that Mr. Tompkins published content that was both defamatory and harassing to Ms. Janzen and the Wolvertons. The new websites disclosed personal information of Ms. Janzen and Ms. Wolverton in a manner similar to the previous websites. The new websites also contained content that was lewd, lascivious, indecent, and suggested the commission of lewd and lascivious acts. The court found that the content fit within the meaning of harassment as used in the prior injunction.

The court concluded that Mr. Tompkins was in contempt of part III.2 of the 2008 permanent injunction. To prevent further harassment and to protect the privacy interests of the parties, the court modified the permanent injunction to enjoin Mr. Tompkins from publishing content that is defamatory, harassing, or that contains personal information about Stephanie Janzen, Charlotte Wolverton, or Tom Wolverton.

The trial court order stated in part:

> 3. Part III.7 of the Permanent Injunction entered on November 21, 2008 is amended as follows:
>> Randles P. Tompkins is permanently enjoined from publishing, or causing to be published, personal or defamatory information regarding Stephanie E. Janzen, Charlotte Wolverton, or Tom Wolverton on any website or in any medium capable of conveying that information to 3rd

parties. This restriction encompasses references to Stephanie
E. Janzen, Charlotte Wolverton, or Tom Wolverton made in
any manner that a reasonable person familiar with these
proceedings would be able to identify the person being
referenced.
4. Mr. Tompkins is hereby ordered to remove all content that
violates the Permanent Injunction as amended from public viewing by
May 20, 2014.

CP at 274-75. To coerce compliance, the trial court ordered Mr. Tompkins to forfeit

$200 for each day he willfully remained in contempt of the order beyond May 20, 2014.

The court also awarded Ms. Wolverton reasonable attorney fees and costs incurred by

enforcing the permanent injunction. Mr. Tompkins appeals.

ANALYSIS

This court reviews a trial court's order of contempt for an abuse of discretion.

*Weiss v. Lonnquist*, 173 Wn. App. 344, 364, 293 P.3d 1264, *review denied*, 178 Wn.2d

1025, 312 P.3d 652 (2013). A trial court abuses its discretion when its decision is based

on untenable grounds or is made for untenable reasons. *Id*. at 363. "Whether contempt is

warranted in a particular case is a matter within the sound discretion of the trial court;

unless that discretion is abused, it should not be disturbed on appeal." *In re Pers.*

*Restraint of King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988).

Mr. Tompkins contends that the trial court violated due process in the contempt

proceedings by not allowing him to call witnesses. He also contends that the evidence

7

was insufficient to support the order of contempt. Although Mr. Tompkins did not assign error to specific findings of fact or conclusions of law, his argument addresses the court's rulings that the websites contained personal information and were controlled by Mr. Tompkins. Finally, Mr. Tompkins contends that the injunction is unconstitutional because it is a prior restraint on his speech.[1]

1. *Whether Mr. Tompkins's due process rights were violated because he was not allowed to call witnesses*

"Disobedience of a court order is grounds for a court to order a sanction for contempt of court." *Weiss*, 173 Wn. App. at 363. A court may find a person in contempt of court if the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform. RCW 7.21.030(2).

Specifically, RCW 7.40.150 provides for contempt action against a party who disobeys a permanent injunction. "Whenever it shall appear to any court granting a restraining order or an order of injunction, or by affidavit, that any person has willfully disobeyed the order after notice thereof, such court shall award an attachment for contempt against the party charged, or an order to show cause why it should not issue." RCW 7.40.150. An enjoined party must comply with the terms of the injunction both literally and in spirit. *Blakiston v. Osgood Panel & Veneer Co.*, 173 Wash. 435, 438, 23

---

[1] The contentions in Mr. Tompkins's briefs are unintelligible gibberish. We glean these issues from some of the phrases that appear randomly throughout his opening brief.

P.2d 397 (1933). The enjoined party may not attempt to circumvent the restrictions by trickery or evasion. *Id.*

When exercising contempt powers to coerce a party to comply with an order or to punish a party, procedural safeguards must be employed to satisfy due process. *In re Marriage of Nielson*, 38 Wn. App. 586, 588, 687 P.2d 877 (1984). When contempt is indirect and based on acts committed outside the presence of the court, due process requires that the offender be given notice, a reasonable time to prepare a defense, and a hearing. *Id.* at 588-89. The amount of due process required depends upon whether the sanctions are remedial or punitive.

> A "[r]emedial sanction" is one "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). "Remedial sanctions" are also known as "coercive" sanctions, and they are civil in nature.
> In contrast, a "[p]unitive sanction" is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). Punitive sanctions are criminal in nature. When a court imposes a punitive contempt sanction, it must afford a contemnor full criminal due process. RCW 7.21.040.

*In re Silva*, 166 Wn.2d 133, 141, 206 P.3d 1240 (2009) (alterations in original).

When punitive sanctions are contemplated, the contemnor is entitled to full due process, i.e., notice of the facts that constitute the alleged contempt and a right to be heard—the latter which includes a reasonable time to prepare a defense and to produce

witnesses and documents in his defense. *State v. Hatten*, 70 Wn.2d 618, 621, 425 P.2d 7 (1967). What constitutes a reasonable time depends on the particular circumstances, including whether the defense is legal or factual in nature. *Id.* at 621 (quoting 5 WHARTON'S CRIMINAL LAW & PROCEDURE § 1914 (1957)).

Here, the guardianship estate requested that Mr. Tompkins be incarcerated for repeated violations of the November 2008 restraining order. Because punishment was sought for past contempt, and because the alleged contempt occurred outside of the court's presence, Mr. Tompkins was entitled to full due process, including the ability to prepare a defense and to produce witnesses and documents in his defense. The record before us establishes that Mr. Tompkins received sufficient notice of the alleged contempt, sufficient time to prepare a defense, and an attorney to assist him with his argument before and during the May 9, 2014 hearing. The record however is silent on whether Mr. Tompkins ever requested to call witnesses and was denied his request.

A party who seeks appellate review of a constitutional claim has the burden of providing a record sufficient to permit review of the issue presented. *State v. Tracy*, 158 Wn.2d 683, 691, 147 P.3d 559 (2006). An appellate court may decline to consider a claim or argument if it has not been provided an adequate record for review. *Id.* Because the record is insufficient to review this alleged error, we decline to consider this argument.

10

2. *Whether sufficient evidence supports the trial court's finding that Mr. Tompkins was in contempt*

The evidence supports the trial court's findings that websites under Mr. Tompkins's control contained similar defamatory information about Ms. Janzen and the Wolvertons as the previously enjoined websites. For example, the website www.valentinesdayontrial.com referred to "Stephanie Doe" and "Charlotte Doe." CP at 125, 202. Although the last names were changed from the 2008 enjoined websites, the new website unquestionably referred to Stephanie Janzen and Charlotte Wolverton. The website contained Stephanie Doe's phone number, date of birth, and age. It included transcripts of personal telephone calls attributed to Stephanie Doe made to Mr. Tompkins. The website also contained a long narrative of Mr. Tompkins's interactions with Ms. Janzen and the Wolvertons. Two other websites, www.westlawbooks.com and www.usconstitutionallaw.com contained similar personal information.

Additionally, during the 2014 hearings, new information was added to the www.valetinesdayontrial.com website that stated that the guardian asked men to date her daughter and used her daughter as a sex slave. In total, this information was both defamatory and harassing to Ms. Janzen and the Wolvertons.

The evidence supports the court's finding that Mr. Tompkins was in control of the offending websites. All three websites were registered to Rommel Westlaw, an alias of

11

Mr. Tompkins, prior to the March 28, 2014 show cause hearing. However, after the show

cause hearing, the registrar of www.valentinesdayontrial.com website was changed to

Barbara Dyke.

Based on the evidence presented, the court correctly determined that Mr.

Tompkins was in violation of the section of the 2008 injunction that permanently

enjoined Mr. Tompkins from harassing Ms. Janzen, including but not limited to,

providing personal information regarding Ms. Janzen and the Wolvertons to third parties.

Thus, the court did not abuse its discretion in finding Mr. Tompkins in contempt.

3.    *Whether the injunction is an unconstitutional prior restraint*

We apply the de novo standard of review to questions of law in the context of

prior restraint. *See In re Marriage of Suggs*, 152 Wn.2d 74, 79, 93 P.3d 161 (2004).

Article I, section 5 of the Washington Constitution states: "Every person may freely

speak, write and publish on all subjects, being responsible for the abuse of that right."

Article I, section 5 prohibits prior restraints against protected speech but permits prior

restraints against unprotected speech. *State v. Coe*, 101 Wn.2d 364, 374-75,

679 P.2d 353 (1984). The United States Supreme Court defines prior restraints as

"'[a]dministrative and judicial orders *forbidding* certain communications when issued in

advance of the time that such communications are to occur. . . . Temporary restraining

orders and permanent injunctions—*i.e.*, court orders that actually forbid speech

activities—are classic examples of prior restraints.'" *Suggs*, 152 Wn.2d at 81 (citation omitted ) (some alterations in original) (quoting *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)).

Here, Mr. Tompkins asserts that the amended injunction is an unconstitutional prior restraint because it prohibits him from publishing personal or defamatory information concerning Ms. Janzen or the Wolvertons. We disagree.

In *Bering v. Share*, 106 Wn.2d 212, 243-44, 721 P.2d 918 (1986), the court decided to what extent a trial court could enjoin the content of speech as a civil remedy after finding an abuse of free speech rights. There, the owner of a medical building and physicians practicing therein sought an injunction preventing members of an antiabortion organization from picketing in front of the building and harassing patients and staff when entering and leaving the building. The trial court granted a permanent injunction limiting the location of the members' picketing to a sidewalk along the side of the building and prohibiting the members from engaging in aggressive and coercive behavior, obstructing access to the building, and uttering inflammatory words such as "kill" and "murder." The *Bering* court substantially upheld the injunction. As for the portion of the injunction that prohibited the content of what the picketers could say, the court held that the picketers' verbal activities could be regulated because the State had a compelling interest in

13

protecting the welfare of adolescents[2] entering and leaving the building. *Id.* at 242. In so holding, the *Bering* court reasoned that the prohibition was not an unconstitutional prior restraint on speech because the prohibition occurred only *after* the trial court determined that the picketers had abused their free speech rights. *Id.* at 243. The *Bering* court held that the prohibition was instead a post-publication civil sanction, which was consistent with article I, section 5 of the Washington Constitution, provided that the civil sanction was narrowly tailored to serve a compelling state interest. *Id.* at 243-45. The court, however, held that the prohibition on verbal speech was not narrowly tailored because it was not limited to situations where adolescent clients were within earshot. *Id.* at 244. For this reason, the court remanded for the trial court to amend the injunction. *Id.* at 246.

Here, the trial court earlier determined that Mr. Tompkins's statements concerning Ms. Janzen and the Wolvertons were defamatory. Defamatory speech is not protected by the First Amendment. *See Duc Tan v. Le*, 177 Wn.2d 649, 662-63, 300 P.3d 356 (2013). Privilege does not extend to "'a false statement of fact, whether it was expressly stated or implied from an expression of opinion.'" *Id.* at 663 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)).

---

[2] Although the court referred to the protected persons as "children," the context of the holding shows that the "children" were adolescent minors entering the clinic to obtain information or services.

The post-publication injunction was not a prior restraint on speech. The injunction served a compelling state interest to protect Ms. Janzen, an incapacitated adult, from Mr. Tompkins's harassment and defamatory speech. Like in *Bering* where the State had a compelling interest in protecting adolescents from disturbing messages in the abortion context, the State also has a compelling interest to protect an incapacitated adult from an individual's harassment. *See Bering*, 106 Wn.2d at 245. Moreover, given the context of Mr. Tompkins's harassment by which he harms Ms. Janzen with his accusations against the Wolvertons, Ms. Janzen cannot be adequately protected unless the Wolvertons, too, are protected.

Nevertheless, we conclude that the prohibition of publishing "personal" information concerning Ms. Janzen and the Wolvertons is not narrowly tailored. To the extent the injunction prohibits publication of harassing or defamatory speech, this does not involve a constitutionally protected right and can be properly prohibited. However, to the extent that the injunction prohibits publication of speech that is not harassing or defamatory, the injunction is not narrowly tailored. We therefore remand to the trial court for it to define "personal" or otherwise narrow the scope of the injunction so it does not prohibit protected speech.

4.      *Whether the respondents are entitled to attorney fees on appeal*

The respondents request attorney fees on appeal pursuant to RAP 18.1 and

RAP 18.9, asserting that Mr. Tompkins's appeal is frivolous. The respondents contend

that Mr. Tompkins's appeal presents no debatable issues on which reasonable minds

might differ.

A party may request attorney fees on appeal pursuant to RAP 18.1. Similarly,

RAP 18.9(a) allows this court to impose sanctions against a party for bringing a frivolous

appeal. An appeal is frivolous when it presents no debatable issues on which reasonable

minds might differ, and it is so devoid of merit that there is no possibility of reversal.

*Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d

577, 580, 245 P.3d 764 (2010). Doubts as to whether an appeal is frivolous should be

resolved in favor of the appellant. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d

225, 241, 119 P.3d 325 (2005) (quoting *Green River Cmty. Coll. Dist. No. 10 v. Higher

Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986)). Raising at least one

debatable issue precludes a finding of frivolity. *Advocates*, 170 Wn.2d at 580.

Mr. Tompkins's briefing is mostly gibberish, but we determine that the prior

restraint issue he unartfully raises has sufficient merit to warrant a remand. The

respondent's request for attorney fees is therefore denied.

16

No. 33272-1-III
*In re Guardianship of Janzen*

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____  _____
Siddoway, C.J.            Brown, J.

17