**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 29, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 29, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES, <br><br>            Petitioner, <br><br>     v. <br><br> CANNABIS GREEN, LLC dba LOVELY BUDS, a Washington limited liability company, SIMPLY BUD, LLC dba LOVELY BUDS NORTH, a Washington limited liability company, TLE OF SPOKANE, LLC dba LOVELY BUDS DIVISION, a Washington limited liability company, and TODD BYCZEK and ELIZABETH BYCZEK, in their individual capacities and as a marital community, <br><br>            Respondents. | No. 102922-5 <br><br> EN BANC <br><br> Filed: <u>May 29, 2025</u> |

GORDON McCLOUD, J.—When an employer fails to pay its employees, the Department of Labor & Industries (L&I or DLI) "may . . . [o]rder the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed." RCW 49.48.040(1)(b).

In this case, L&I sued employer Cannabis Green[1] in Spokane County Superior Court to recover wages owed to its employees, plus statutory double damages and attorney fees. But according to Cannabis Green, L&I did not first "order the payment of all wages owed the workers."

Cannabis Green moved to dismiss on the ground that the statutory language quoted immediately above requires L&I to issue a formal order directing the employer to pay a sum certain to its employees first, as a prerequisite to filing suit, and that L&I failed to do so. The Superior Court agreed and dismissed L&I's complaint, and the Court of Appeals affirmed.

We reverse. We agree with Cannabis Green and the lower courts that the statute requires L&I to "[o]rder the payment of all wages owed the workers," RCW 49.48.040(1)(b), first, as a prerequisite to filing suit. But we disagree with Cannabis Green's argument that L&I must take this first step by issuing a formal administrative or director's order that directs the employer to pay a predetermined sum certain at this preliminary stage of the proceedings. The statute certainly doesn't say that, and its context does not suggest that.

---

[1] Respondents Cannabis Green LLC dba Lovely Buds; Simply Bud LLC dba Lovely Buds North; TLE of Spokane LLC dba Lovely Buds Division; and their owners, Todd and Elizabeth Byczek (collectively Cannabis Green).

L&I can therefore satisfy its obligation to "order the payment of all wages owed the workers" in other ways, such as with an informal directive to comply with the relevant labor laws that it alleges were violated, even without specifying the exact sum owed at this early stage.

The facts presented here, in particular L&I's muddled communications to Cannabis Green, make it difficult to decide whether L&I complied with this statutory obligation. Believing that Cannabis Green had engaged in some wage and hour misconduct, L&I proposed a settlement. Nothing in the settlement stated that employees would receive monetary compensation for their lost wages. Instead, Cannabis Green would pay $25,000 in legal fees to the department. L&I offered no liability release to Cannabis Green for the alleged unpaid employee wages, and it demanded that Cannabis Green continue to investigate itself, with no promise of resolution or liability release in future years.

However, the proposed settlement agreement did identify the wage and hour law that it alleges Cannabis Green violated, it listed Cannabis Green's practices that allegedly violated the identified law, it listed the time periods during which the alleged violations occurred, and it stated the steps that L&I would take to obtain redress for the workers if Cannabis Green declined to settle.

While L&I did not use the word "order" or "directive"—and while L&I's demand for payment to the workers was conditioned on Cannabis Green's refusal to settle—L&I's proposed settlement agreement still provided enough information to constitute an informal directive to the employer to redress the alleged violations.

Thus, we hold that L&I complied with its statutory obligation to "order the payment of all wages owed the workers" as a prerequisite to filing suit based on those alleged violations. We therefore reverse the decision of the Court of Appeals, reverse the granting of summary judgment, and remand to the trial court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

I.    L&I investigates a Cannabis Green employee's wage complaint in 2019

Todd and Elizabeth Byczek own and operate three cannabis retail stores in Spokane (collectively Cannabis Green). Clerk's Papers (CP) at 43-44. The three stores employ between 75 and 100 people. *Id.* at 174. Employees are required to work shifts at all of the stores. *Id.* at 43.

In January 2019, a former employee filed a wage complaint under the wage payment act (WPA), chapter 49.48 RCW, against Cannabis Green, alleging overtime violations. CP at 121, 45; *see* RCW 49.48.083. The employee alleged that

4

Cannabis Green failed to pay her overtime for the total hours she worked across all three stores. CP at 213.

L&I investigated and concluded that Cannabis Green had a joint-employer relationship with respect to its employees at all three stores, so state laws required it to pay overtime when an employee's total hours exceeded 40 hours in a week across all the stores. *Id*. In May 2019, L&I issued a citation and notice of assessment under RCW 49.48.083(1) against Cannabis Green for failing to pay the employee overtime. *Id.* at 45. In October 2019, Cannabis Green settled the wage complaint as to that employee. *Id*. The settlement did not affect any other worker. *Id*.

II. L&I's investigation reveals additional wage and hour violations, but Cannabis Green declines to provide complete payroll records and rejects a proposed compliance agreement and mediation

L&I's investigation of the worker's wage complaint, however, revealed that Cannabis Green had also violated overtime laws as to other employees. CP at 46-47. In March 2020, L&I sent correspondence to Cannabis Green, requesting certain pay stub and payroll records. *Id.* at 46, 220-21. Cannabis Green provided the records and responded to L&I's follow-up questions. *Id*. at 46, 223.

In October and November 2020, L&I requested, via letter, additional payroll records and work schedules, as well as information about Cannabis Green's sick time, break, opening and closing, and tip policies. *Id*. at 46, 225.

Cannabis Green did not comply with either request. *Id.* at 47. Instead, in December 2020, it sent a letter to L&I, stating that it objected to the investigation and that it refused to provide any additional information. *Id.* at 47, 216.

L&I responded in March 2021 by trying to serve administrative subpoenas on the Byzceks to obtain the information the company declined to provide voluntarily. *Id.* at 47. But the process server could not find the Byzceks at the stores and did not attempt service at their home. *Id.* at 216. L&I withdrew the subpoenas and did not attempt to serve them again (although it certainly had the legal authority to try to do so). Verbatim Rep. of Proc. (Dec. 16, 2022) (VRP) at 46.

In April 2021, Cannabis Green filed a petition for writ of certiorari under RCW 7.16.040, objecting to and seeking a review of L&I's investigation. CP at 74. The court agreed with Cannabis Green that L&I had "not properly served" the subpoenas. *Id*. But it disagreed with Cannabis Green's assertion that L&I must stop its investigation, and, hence, it granted L&I's motion to dismiss the petition. *Id*.

So L&I's investigation continued, and L&I received more wage complaints from additional Cannabis Green employees. *Id.* at 209-10. But these additional complainants either failed to submit complete wage complaints or failed to respond to L&I's requests for additional information, so L&I closed their claims without action. *Id.* at 210.

Then, in August 2021, L&I sent a written proposed compliance agreement to Cannabis Green to "resolve wage and hour issues, sick leave issues and other matters for the purpose of avoiding the inconvenience, uncertainty, and expense of litigation." *Id.* at 87. The agreement identified Cannabis Green's violations of the minimum wage act (MWA), chapter 49.46 RCW, provisions on "overtime pay, unpaid hours worked, sick leave, lunches and break time." *Id.* The agreement indicated that by signing, Cannabis Green would acknowledge that it violated wage laws related to those issues between August 1, 2018 and August 1, 2021. *Id.* That proposed agreement would have required Cannabis Green to conduct self-audits on compliance and report them to L&I for a year. *Id.* at 88. It would have also required Cannabis Green to pay L&I $25,000 "in attorney fees and costs." *Id.*

In an e-mail to Cannabis Green, L&I explained that "[t]hrough the agreement, L&I will commit not to investigate wage and hour violations through the date of the signed compliance agreement," except if individual employees filed

WPA wage complaints, which L&I is statutorily required to investigate. CP at 99.

L&I continued that if the parties could not reach an agreement, "then the

investigation will proceed. L&I will demand payment of any wages determined to

be due, as well as seeking attorneys' fees and the changes to business practices

identified in the current demand." *Id.*

Cannabis Green rejected the proposed agreement in October 2021. CP at

102. It also rejected L&I's subsequent proposal for mediation. *Id.* at 110, 112-13.

III.    L&I files complaint against Cannabis Green under RCW 49.48.040; trial
        court grants Cannabis Green's summary judgment motion

In May 2022, L&I filed a complaint against Cannabis Green on behalf of

"affected workers including all current and former non-exempt employees" who

worked for Cannabis Green since March 2019. CP at 1-5. It filed the complaint

pursuant to RCW 49.48.040 and stated five claims for relief for many of the same

violations of wage and hour laws that it had identified in its proposed compliance

agreement,[2] along with some new claims: violations of the MWA (RCW

49.46.020, .090), the agreed wages act (RCW 49.52.050), overtime laws (RCW

49.46.130), paid sick leave laws (RCW 49.46.210), and willful nonpayment laws

---

[2] Recall that the proposed settlement agreement alleged that Cannabis Green violated the MWA's provisions on "overtime pay, unpaid hours worked, sick leave, lunches and break time." CP at 87 (citing ch. 49.46 RCW).

(RCW 49.52.050). *Id.* at 5-10. It sought compensatory and exemplary damages for the affected workers, along with interest, costs, and attorney fees. *Id.* at 10. L&I later moved to amend that complaint to include an allegation that Cannabis Green owed employees approximately $318,500 in unpaid wages, statutory double damages and interest, with the amount subject to change "as further evidence becomes available." *Id.* at 23.

In November 2022, Cannabis Green filed a motion to dismiss, citing both CR 12(b)(6) (failure to state a claim) and CR 56 (summary judgment). *Id.* at 59-60. The trial court held a hearing on both parties' motions and considered declarations. *See* VRP (Dec. 9, 2022; Dec. 16, 2022); *Dep't of Lab. & Indus. v. Cannabis Green LLC*, 30 Wn. App. 2d 131, 136, 544 P.3d 533 (2024). It granted L&I's motion to amend the complaint to include the $318,500 amount. CP at 309. But it also granted Cannabis Green's motion to dismiss. *Id.* at 311-12.

The Court of Appeals affirmed. *Cannabis Green,* 30 Wn. App. 2d 131. It held, as a matter of first impression, that under RCW 49.48.040(1)(b), L&I "cannot institute actions to collect sums that it had not previously determined to be owed and ordered from the employer." *Id.* at 141. The court held that it need not "decide the specific procedures required when DLI orders an employer to pay wages owed under RCW 49.48.040(1)(b) because DLI does not claim to have made any attempt

to order Cannabis Green to pay any wages owed." *Id*. at 143. But it concluded that "since DLI failed to comply with this statutory prerequisite it is not authorized to institute an action in superior court." *Id*. at 133.

We granted L&I's petition for review.[3] 3 Wn.3d 1007 (2024).

STANDARD OF REVIEW

We agree with the parties that the summary judgment standard applies. *Cannabis Green*, 30 Wn. App. 2d at 136. When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court, considering the facts and reasonable inferences in the light most favorable to the nonmoving party. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 295, 996 P.2d 582 (2000). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

---

[3] The Fair Work Center, Working Washington, and National Employment Law Project filed an amici curiae brief supporting review. They argue that Cannabis Green violated the MWA's payroll recordkeeping and production requirements and contend that the Court of Appeals' ruling will incentivize employers to violate those requirements. Br. of Amici Curiae Fair Work Ctr. et al. at 12. We agree with Cannabis Green that amici's arguments are beyond the scope of the question presented in this case, which is determining the meaning of RCW 49.48.040(1)(b). Resp'ts' Answer to Br. of Amici Curiae Fair Work Ctr. et al. at 9-10.

ANALYSIS

I.      History and context of the statute at issue here, RCW 49.48.040

Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz*, 140 Wn.2d at 300. One aspect of that history is the "Collection of Wages in Private Employment Act" (CWPEA), first enacted in 1935 and codified at RCW 49.48.040-.070. LAWS OF 1935, ch. 96, §§ 1-4.  The CWPEA has always delegated enforcement powers to L&I. In its original form, the law imposed a duty on L&I to investigate wage payment violations and permitted L&I "to take assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel." *Id.* § 1.

In 1987, the legislature reorganized and amended the CWPEA. LAWS OF 1987, ch. 172. The amendments retained the provision discussed above. The legislature also added the provision at issue here. As amended, RCW 49.48.040(1) currently provides:

1) The department of labor and industries may:

    (a)     Upon obtaining information indicating an employer may be committing a violation under chapters 39.12, 49.46, and 49.48 RCW,

conduct investigations to ensure compliance with chapters 39.12, 49.46, and 49.48 RCW;[4]

(b)     *Order the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed*; and

(c)     Take assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel when in the judgment of the director of the department the claims are valid and enforceable in the courts.

(Emphasis added.)

The Court of Appeals first interpreted RCW 49.48.040(1)(b) in *Department of Labor & Industries v. Overnite Transportation Co.*, 67 Wn. App. 24, 834 P.2d 638 (1992). In that case, a trucking company failed to pay workers overtime wages required by the MWA. *Id.* at 28. After investigating, L&I determined that Overnite owed $9,786.91 to 11 workers for overtime and sent Overnite a letter demanding that it pay the wages due. When Overnite refused, L&I sued, pursuant to RCW 49.48.040(1)(b), to recover the wages owed. *Id.* L&I also sought attorney fees and exemplary damages under RCW 49.52.070. The employer objected; it argued that RCW 49.52.070 provided a remedy to employees and their assignees, not to L&I— because L&I was neither an employee nor assignee of any employee's claim. The Court of Appeals disagreed; it explained that when L&I sues to recover wages under RCW 49.48.040(1)(b), it "stands in the shoes of the aggrieved employees

---

[4] Chapter 39.12 RCW is the prevailing wage act. Chapter 49.46 RCW is the MWA. Chapter 49.48 RCW contains the CWPEA and the WPA.

12

and acts in a representative capacity on their behalf," even without an assignment. *Id.* at 36. The court reasoned that permitting L&I to recover under this statute "while serving in this representative capacity" furthers L&I's ability to bring future wage claim lawsuits and serves as a "deterrent by placing employers on notice that they will be liable for the attorney fees incurred because of their wrongful refusal to pay." *Id.* at 39-40. Thus, the Court of Appeals held that L&I was entitled to recover attorney fees and exemplary damages under RCW 49.52.070, even though L&I was not an assignee of the employees' claims. *Id.*

In 2006, the legislature enacted the WPA, giving L&I an additional tool to help workers recover unpaid wages. LAWS OF 2006, ch. 89, §§ 1-7. The WPA created a new administrative process under which an individual may file a "wage complaint," defined as a written "complaint from an employee to the department that asserts that an employer has violated one or more wage payment requirements." RCW 49.48.082(11).[5] Upon receipt of a wage complaint, L&I "shall" investigate and, "[u]nless otherwise resolved," within 60 days shall either issue a citation and notice of assessment or issue a determination of compliance.

_____

[5] Cannabis Green refers to the instant lawsuit filed by L&I as a "wage complaint." *See* Answer to Pet. for Rev. at 12, 23. But, as seen, "wage complaint" has a specific statutory definition: a written complaint submitted by an employee to L&I. The complaint in this case, which L&I filed in superior court under RCW 49.48.040(1)(b), is not a "wage complaint."

RCW 49.48.083(1). The employer can then administratively appeal such a WPA notice of citation and assessment. RCW 49.48.084(1).

Notably, the WPA does not displace the CWPEA: it explicitly preserves L&I's power to pursue available judicial actions against employers in the absence of a wage complaint. RCW 49.48.085(3)(c) ("Nothing in this section shall be construed to limit or affect . . . the right of the department to pursue any judicial, administrative, or other action available with respect to an employer in the absence of a wage complaint.").

The statutory history discussed above shows that the legislature has consistently protected and expanded L&I's power to enforce wage laws on behalf of workers. And *Overnite* also makes clear that interpreting L&I's statutory enforcement powers broadly—to protect workers and deter employers from violating the law—comports with legislative intent.

But no court has yet answered the question posed here: whether RCW 49.48.040(1)(b) requires L&I to issue a formal order to the employer to pay a sum certain as a prerequisite to filing suit to collect unpaid wages. For the reasons discussed below, we hold that the statute requires L&I to demand payment before filing suit, but that it does not require L&I to do so with a formal order containing

a sum certain that L&I might not yet be able to determine, due to lack of access to sufficient employer records.

  II.  The statute requires L&I to demand payment before filing suit, but it does not require L&I to issue a formal order for payment of a sum certain at that early stage

  Statutory interpretation is a question of law that we review de novo. *Associated Gen. Contractors of Wash. v. State*, 2 Wn.3d 846, 853, 544 P.3d 486 (2024) (quoting *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195 Wn.2d 198, 204, 457 P.3d 453 (2020)). Our goal is to determine the legislature's intent. *Id.* at 855 (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We determine legislative intent from the "plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10).

  Further, remedial wage and hour laws "must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1988) (citing *Brandt v. Impero*, 1 Wn. App. 678, 682, 463 P.2d 197 (1969)). When interpreting

remedial labor statutes, any doubts must be "resolved in favor of the worker." *Dennis v. Dep't of Lab. & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

With these principles in mind, we begin with the plain language of the statute. When determining a statute's plain meaning, we consider the "'ordinary meaning of words [and] the basic rules of grammar.'" *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 245, 350 P.3d 647 (2015) (quoting *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)). As quoted above, RCW 49.48.040(1)(b) provides that L&I "may . . . [o]rder the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed."

As the Court of Appeals explained, this provision grants L&I two powers: it may order payment and it may institute actions. *Cannabis Green*, 30 Wn. App. 2d at 140. The statute is permissive—L&I need not exercise either power. But we agree with the Court of Appeals that the structure of the sentence shows that "the second power supplements the first." *Id.* at 141. In other words, L&I may order the payment of wages owed. If the employer complies, there may be no need to exercise the second power. But if the employer's actions make it "necessary" to institute an action to recover those wages, L&I is then empowered to do so. *Id.*

Comparing subsections (1)(b) and (1)(c) bolsters this conclusion. Like subsection (1)(b), subsection (1)(c) lists two powers separated by the word "and": it permits L&I to "[t]ake assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel." Logically, L&I cannot exercise the second power (prosecute actions as the assignee of a wage claim) before it exercises the first power (taking assignment of a wage claim). The parallel structure of the two subsections suggests that subsection (1)(b) should be read in the same chronological fashion.

But nothing in the text of subsection (1)(b) suggests that L&I must order payment of a specific amount of wages before it is in a position to determine exactly what that number is. Instead, the text says broadly that L&I may order payment of "all wages owed the workers." Reading "all wages owed the workers" as necessarily referring to a sum certain is also inconsistent with subsection (1)(b)'s provision that L&I may institute an "action." An "action" is a judicial proceeding subject to normal pleading rules. Washington follows the rule of notice pleading, which means that a plaintiff need not calculate and demand a specific, final amount of damages prior to discovery and litigation. The legislature must certainly have enacted RCW 49.48.010(1)(b) with this basic framework in mind.

17

That conclusion is strengthened by the fact that the legislature used two different phrases in this single statutory subsection (1)(b) to refer to amounts owed: "all wages owed the workers" (at the beginning of RCW 49.48.040(1)(b)) and "sums determined owed" (at the end of RCW 49.48.040(1)(b)). When the legislature uses different terms in the same statute, we presume that it intended the terms to have different meanings. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). "Sums determined owed" is broader than "all wages owed the workers" because it could include not just wages owed but also additional "sums" like the damages and attorney fees that one can seek in an "action."

Finally, we disagree with the Court of Appeals that the participial adjective "determined" in the phrase "sums determined owed" necessarily refers to a precise sum that has already been determined prior to initiation of an action. *Cannabis Green*, 30 Wn. App. 2d at 143-44. A participial adjective may be used in a phrase referring to something that will happen in the future, i.e., "At the end of the week, I will turn in a *completed* assignment." *See* THE CHICAGO MANUAL OF STYLE § 5.94, at 266 (18th ed. 2024) (participial adjectives).

In light of the discussion above, it is more reasonable to read "sums determined owed" as referring to sums that will be determined to be owed as part of the discovery and litigation process.

And if there is any doubt about the meaning of "sums determined owed," our precedent compels us to adopt the interpretation that best serves workers, the intended beneficiaries of the CWPEA. L&I alleges that Cannabis Green's refusal to comply with most of its records requests made it impossible for L&I to determine a precise amount of wages owed. Whether or not that is true is not a question for us to resolve—the record certainly shows that L&I did not use all the statutory tools at its disposal to try to obtain additional information. But reading the statute to impose a requirement that L&I must calculate a precise amount of wages owed prior to initiating a lawsuit, even when an employer declines to provide requested records voluntarily, would impede L&I's ability to help workers collect unpaid wages—the major purpose of the CWPEA.

Thus, we conclude that while L&I must order an employer to pay wages owed prior to filing suit to recover those wages, it need not order payment of a sum certain.[6]

Next, we consider what "order" means in the phrase, "Order the payment of all wages owed the workers . . . ." Throughout this litigation, Cannabis Green argued that RCW 49.48.040(1) requires L&I to issue a formal administrative citation and notice of assessment prior to filing suit.[7] We reject that argument. When examining the statute's "order" requirement in the context of other related statutes, it is clear that the legislature knows how to create detailed, formal

---

[6] The concurrence correctly calls on all of us to be careful of "prefiling requirements [that] raise serious constitutional concerns." Concurrence at 4 n.1. The concurrence is certainly correct that the federal and state constitutions protects the individual's right to access the courts and that prefiling requirements that burden that right raise serious constitutional concerns. U.S. CONST. amend. I; WASH. CONST. art. I, § 10. But we have not been presented with any authority holding that the constitution protects a government agency's (L&I's) right to access the courts or that a prefiling demand for payment burdens any such right where, as here, the government agency possesses substantial prefiling discovery powers.

[7] Specifically, Cannabis Green repeatedly argued that L&I *must* issue a WPA notice of citation and assessment to an employer prior to filing suit, even where, as here, we have no WPA wage complaint. *See, e.g.*, CP at 156-57; Resp'ts' Br. at 2, 18 (Wash. Ct. App. No. 39459-0-III (2023)). The Court of Appeals correctly rejected this argument. By its terms, the WPA's administrative procedure applies only where an employee has filed a wage complaint as defined in the statute. *Cannabis Green*, 30 Wn. App. 2d at 142; *see also* RCW 49.48.084(1). In this case, no employee wage complaints were pending when L&I filed its lawsuit. CP at 209-10. Therefore, there was no wage complaint on which L&I might base an investigation, citation, or assessment.

administrative processes for ordering employers to pay wages owed—and that it chose not to do so here. For example, the WPA requires L&I to investigate wage complaints and "issue either a citation and notice of assessment or a determination of compliance" within 60 days of receipt. RCW 49.48.083(1). We presume that the legislature means different things when it uses such different words. *Densley*, 162 Wn.2d at 219; *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998). Thus, the term "order" should be given its ordinary meaning of a "command, direction, or instruction," which need not be formal. BLACK'S LAW DICTIONARY 1319 (12th ed. 2024); *accord Overnite*, 67 Wn. App. 24 (L&I ordered employer to pay wages owed via demand letter).

In sum, we hold that RCW 49.48.040(1)(b) is unambiguous. It provides that L&I must first order an employer to pay wages owed as a prerequisite to filing suit to recover those wages. But that order need not be formal and it need not demand a sum certain. Next, L&I may file suit when necessary to collect the unpaid wages, with the specific amount owed (along with other potential damages) to be determined through discovery and further litigation, consistent with notice pleading principles.[8]

---

[8] Even if the statute were ambiguous, the legislative history does not support Cannabis Green's restrictive reading of the statute. *State v. Bash*, 130 Wn.2d 594, 601,

III.  In this case, the undisputed evidence shows that L&I identified Cannabis Green's violations prior to filing this lawsuit

The face of L&I's proposed compliance agreement shows that L&I identified Cannabis Green's wage law violations prior to filing suit.  CP at 87. It also shows that L&I identified the time periods during which each of those alleged violations occurred before filing suit. *Id.* And it shows that L&I sought a remedy for those violations. *Id.* at 87-89.

The only remaining question is whether L&I's decision to send Cannabis Green a proposed compliance agreement and contemporaneous correspondence identifying specific wage and hour violations, identifying some laws violated, and notifying Cannabis Green that it would seek payment of wages owed (in an undetermined sum) if Cannabis Green declined to settle, satisfies L&I's statutory

---

925 P.2d 978 (1996) (citing *State v. Silva-Baltazar*, 125 Wn.2d 472, 479, 886 P.2d 138 (1994) (if statute is ambiguous, we may consult legislative history, including final bill reports). Cannabis Green argues that we should consider the house bill report relating to the WPA of 2006. Answer to Pet. for Rev. at 11 (citing *Cannabis Green*, 30 Wn. App. 2d at 142 n.1). That bill report summarizes RCW 49.48.040 as permitting L&I to "investigate wage violations, order employers to pay, and institute actions to collect *after* a determination that sums are owed." H.B. REP. ON H.B. 3185, 59th Leg., Reg. Sess. (Wash. 2006) (emphasis added). But even if this bill report about the WPA (summarizing the CWPEA, a distinct act from the WPA, 19 years after its passage) were persuasive legislative history about RCW 49.48.040, it does not support Cannabis Green's argument that L&I must calculate *a specific sum owed* and then order an employer to pay that sum as a *prerequisite* to filing a lawsuit. Rather, it supports the conclusion that L&I may determine that some amount of wages are owed, and then it may investigate, order payment, and file suit. It would be nonsensical to say that L&I must calculate a specific sum owed prior to investigation.

prerequisites to filing suit. The answer on this record is yes: L&I's steps satisfied its statutory duty to order the payment of wages due to workers first, as a prerequisite to filing suit.

As discussed above, L&I proposed a compliance agreement to avoid litigation. CP at 87. L&I's draft compliance agreement identified wage and hour laws that it alleged Cannabis Green violated. *Id.*[9] L&I explained via contemporaneous e-mail that if Cannabis Green declined to address these violations through the proposed settlement agreement, then it would demand

---

[9] Specifically, L&I made the following allegations:

| | |
|---|---|
| 2.1 | The Department alleges that Cannabis Green violated the . . . (MWA), RCW 49.46, by failing to pay overtime to Cannabis Green employees for the period of time from August 1, 2018 to August 1, 2021. |
| 2.2 | The Department alleges that Cannabis Green violated the . . . (MWA), RCW 49.46, failing to pay employees for hours worked before and after they began and ended their work shift from August 1, 2018 to August 1, 2021. |
| 2.3 | The Department alleges that Cannabis Green violated the . . . (MWA), RCW 49.46 by failing to aggregate the sick leave earned at each of their stores, so employees were not provided all of their accrued sick leave earned at all of the stores combined. This is in violation of RCW 49.46.210. |
| 2.4 | The Department alleges that Cannabis Green did not provide all employees with uninterrupted 30-minute meal breaks and improperly deducted wages from employees' pay when they did not take a required meal break. The Department also alleges this occurred for required 10 minute rest breaks. |

CP at 88.

payment of wages owed and initiate litigation. *Id.* at 99 (stating that if the parties could not reach an agreement, "L&I will demand payment of any wages determined to be due, as well as seeking attorneys' fees and the changes to business practices identified in the current demand."). That gave Cannabis Green enough information to know that L&I had investigated and determined that Cannabis Green had committed several violations of specific, well-identified, wage and hour laws, and that L&I intended to hold them responsible one way or another.

The only things L&I did not do were issue a formal administrative order or state a specific amount owed. But as we explained above, the statute does not require L&I to take those steps.

It is certainly true that Cannabis Green did not sign the compliance agreement. But that just meant that L&I would take the next step that it identified: demand compensation for the employees, and other relief, through litigation.

Taken together, the undisputed content of the proposed agreement and L&I's contemporaneous e-mails satisfy L&I's statutory duty to order the employer to pay wages owed to its employees as a prerequisite to filing suit to collect those wages. The trial court therefore erred in granting Cannabis Green's motion for summary judgment of dismissal, and the appellate court erred in affirming. We reverse the

Court of Appeals, reverse the trial court's order of summary judgment, and remand to the trial court for further proceedings.

IV.    Attorney fees

In the Court of Appeals, L&I made a conditional request for attorney fees under RAP 18.1, RCW 49.48.030, and RCW 49.52.070. Opening Br. of Appellant at 70 (Wash. Ct. App. No. 39459-0-III (2023)). As discussed, *Overnite* held that L&I can recover under RCW 49.52.070 because L&I "stands in the shoes of" aggrieved employees when it brings an unpaid wage lawsuit under RCW 49.48.040(1)(b). 67 Wn. App. at 36. Thus, if L&I prevails below, it is entitled to recover under this provision. *See id.* at 36-37.

If L&I prevails on remand, RCW 49.48.030 also provides a basis for attorney fees. "Under RCW 49.48.030, attorney fees are assessed against the employer in any action resulting in successful recovery of a judgment for wages or salary owed." *Corey v. Pierce County*, 154 Wn. App. 752, 773, 225 P.3d 367 (2010). *Overnite* did not reach the issue of whether L&I can recover attorney fees under this statute, but its reasoning on RCW 49.48.070 applies here: permitting L&I to recover attorney fees while serving in a representative capacity furthers its ability to bring future wage claim lawsuits and serves as a "deterrent by placing

employers on notice that they will be liable for the attorney fees incurred because of their wrongful refusal to pay." 67 Wn. App. at 39-40.

We affirm the Court of Appeals' holding that even if Cannabis Green prevails below, it is not entitled to attorney fees because it failed to cite any authority for such fees apart from RAP 18.1. *Cannabis Green*, 30 Wn. App. 2d at 147 (explaining that RAP 18.1 "does not provide an independent basis for awarding fees"); *see also Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998).

CONCLUSION

We hold that RCW 49.48.040(1)(b) unambiguously requires L&I to order an employer to pay wages owed before L&I may file suit to collect those wages. The statute does not, however, require L&I to issue a formal director's or administrative order, and it does not require L&I to demand a sum certain. We therefore reverse the Court of Appeals, reverse the order of summary judgment, and remand to the trial court for further proceedings. If L&I prevails on remand, it is entitled to its requested attorney fees.

Gordon McCloud, J.

WE CONCUR:

Stephens, C.J.

Johnson, J.

Madsen, J.

O'Donnell, J.P.T.

No. 102922-5

GONZÁLEZ, J. (concurring in result)—Washington workers have the right to be paid for their labor. RCW 49.46.020. Despite that, "[t]he prevalence of wage theft rivals and even surpasses other categories of theft that receive considerably more public attention and law enforcement resources." Nicole Hallett, *The Problem of Wage Theft*, 37 YALE L. & POL'Y REV. 93, 97 (2018); *see also* Ross Eisenbrey, *Wage Theft Is a Bigger Problem Than Other Theft--But Not Enough Is Done To Protect Workers*, ECON. POL'Y INST. (Apr. 2, 2014), http://www.epi.org/publication/wage-theft-bigger-problem-theft-protect [https://perma.cc/E6FY-F992].

Our legislature has enacted many statutes to protect a worker's right to their wage. *See* ch. 49.46 RCW (Minimum Wage Act); ch. 49.48 RCW (concerning the payment and collection of wages). The Department of Labor and Industries has the duty and the power to investigate and combat wage theft. RCW 49.48.040, .082. Among other things, the department has the power to sue employers who have withheld wages. RCW 49.48.040(1)(b).

We are asked whether the legislature limited that power by requiring the department to first order the employer to pay "sums determined owed" as a

prerequisite to filing suit. *Id.* I concur with the majority that the legislature did not.

The majority concludes, however, that RCW 49.48.040(1) does require the

department to demand that the employer pay unpaid wages as a prerequisite for

suit. Because I do not find that requirement in the statute, and because implying

such a requirement conflicts with our obligation to read statutes enacted to remedy

wrongs liberally in light of their purpose, I concur in result only.

Under the relevant statute:

The department of labor and industries may:

(a) Upon obtaining information indicating an employer may be committing a violation under chapters 39.12, 49.46, and 49.48 RCW, conduct investigations to ensure compliance with chapters 39.12, 49.46, and 49.48 RCW;

(b) Order the payment of all wages owed the workers and institute actions necessary for the collection of the sums determined owed; and

(c) Take assignments of wage claims and prosecute actions for the collection of wages of persons who are financially unable to employ counsel when in the judgment of the director of the department the claims are valid and enforceable in the courts.

RCW 49.48.040(1).

To put in simpler terms, the department

- o may investigate whether the employer is violating several statutes related to wages;
- o may order the employer to pay employees wages;
- o may bring actions necessary to collect employee wages; and

  o may prosecute wage claims on behalf of workers unable to do so themselves.

  By the plain terms of the statute, the department "may" do any of those things. *Id.* While the statute suggests a natural order in which the department may do these things, nothing in the statute requires the department to follow that order.

  If the plain text is not enough (and I believe it is), any ambiguity should be resolved in favor of protecting the worker. We construe statutes in light of their purpose. *Nwauzor v. GEO Grp., Inc.*, 2 Wn.3d 505, 512, 540 P.3d 93 (2023). Here, the purpose of our wage and hour statutes are clear: to protect the worker's right to their wages. *See* ch. 49.48 RCW; RCW 49.46.005.

  Reading that text in the light of the legislature's remedial purpose its meaning is even more clear. The department is empowered to investigate and remedy wage theft claims. While ordering the employer to pay unpaid wages prior to filing suit may be a good idea in some cases, such as when the wrongfully

withheld amounts are clear and the employer is cooperative, the legislature has left that decision to the agency charged with doing the work.[1]

Wage theft is a serious problem in Washington. *See generally Your Right To Be Paid*, WASHINGTON STATE WORKERS' RIGHTS MANUAL, https://rightsatworkwa.org/know-your-rights/your-right-to-be-paid/ [https://perma.cc/6966-MLK3]. Amici provided evidence that "'an estimated 3 in 10 low-wage workers in King County experienced minimum wage violations between 2009 and 2019, depriving them of a sixth of their minimum wages, on average. As in the rest of the nation, immigrants, women, and people of color were much more likely to be affected.'" Br. of Amici Curiae Fair Work Ctr./Working Wash., Wash. Emp't Laws. Assoc. & Nat'l Emp't L. Proj. at 4 (quoting NEIL DAMRON, MARTIN GARFINKEL, DANIELLE ALVARADO, & DANIEL GALVIN, WAGE THEFT IN KING COUNTY: ANALYSIS AND RECOMMENDATIONS FOR IMPROVING LABOR STANDARDS ENFORCEMENT 4 (2022), https://aqua.kingcounty.gov/council/agendas/HHS/20250506-HHHS-

---

[1] I note that prefiling requirements raise serious constitutional concerns. *See Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 979, 216 P.3d 374 (2009). Procedural prerequisites to suit are, with rare exception, established by court rules, not by the legislature. *Id.* We should view claims that the legislature created procedural prerequisites to suit with suspicion to avoid constitutional doubt. *Utter v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) (citing *State v. Robinson*, 153 Wn.2d 689, 693-94, 107 P.3d 90 (2005) (We should interpret statutes to avoid constitutional doubt when possible)). It may be that the fact this is a statutory, rather than common law, cause of action would justify treating it differently as a special proceeding. *See Putman*, 166 Wn.2d at 982. However, Cannabis Green does not make this argument. Given the majority's disposition, the question is moot in this case, but it bears careful reflection in the future.

*Dep't of Labor and Indus. v. Cannabis Green*, No. 102922-5 (González, J., concurring)

Additional.pdf [https://perma.cc/VQ4W-LFWM]). The department should not be artificially hampered from fighting this extraordinarily serious problem.

Because the majority properly rejects the Court of Appeals' cramped reading of the statute and remands for further proceedings, I concur in judgment. But because the majority imposes a constitutionally dubious requirement on the department that the statute does not, I respectfully concur in result only.

González, J.

Yu, J.

Montoya-Lewis, J.

Whitener, J.

5